884 So.2d 107 (2004)
ISLAND, INC., a Florida corporation, and Beach Development, Inc., a Florida corporation, Appellants,
v.
The CITY OF BRADENTON BEACH, a Florida municipal corporation, Appellee.
No. 2D03-3628.
District Court of Appeal of Florida, Second District.
June 23, 2004.
Rehearing Denied August 19, 2004.
John P. Harllee, III, and Brian L. Trimyer of Harllee & Bald, P.A., Bradenton, for Appellants.
Gregory W. Hootman of Gregory W. Hootman, P.A., Sarasota, for Appellee.
WHATLEY, Judge.
Island, Inc. and Beach Development, Inc. appeal the final judgment affirming the denial by the City Commission of the City of Bradenton Beach of their petition for two small-scale development amendments to the City's comprehensive plan.[1] *108 The Appellants sought the amendments to change the designation of their property on the future land use map of the City's comprehensive plan from preservation, a classification which permits no development, to medium/high residential/tourist in order to construct a duplex on each of their two lots. We reverse.
"[S]mall-scale development amendments sought pursuant to section 163.3187(1)(c) are legislative decisions which are subject to the fairly-debatable standard of review." Coastal Dev. of N. Fla., Inc. v. City of Jacksonville Beach, 788 So.2d 204, 210 (Fla.2001). "The fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety." Martin County v. Yusem, 690 So.2d 1288, 1295 (Fla.1997). This court reviews the trial court's application of the fairly debatable standard de novo. Martin County v. Section 28 P'ship, Ltd., 772 So.2d 616 (Fla. 4th DCA 2000). The "fairly debatable" rule is a rule of reasonableness. Lee County v. Sunbelt Equities, II, Ltd. P'ship, 619 So.2d 996, 1002 (Fla. 2d DCA 1993).
The trial court erred in finding that, based on the evidence that was before the City Commission at the public hearing on the Appellants' petition, the City's denial of the Appellants' petition was fairly debatable. The Appellants presented expert testimony, including from the City's own land planner, showing that the designation of the Appellants' property as preservation was erroneous because the property did not meet the definition of preservation. They also presented evidence, and the trial court found, that Manatee County had taxed the property as R-3, i.e., residential, property, and the mayor's son had been issued a license to operate a sailboat rental business on the property, which activity is not allowed on preservation property. The City, on the other hand, presented only the testimony of neighboring property owners and individuals who had been on either the City Commission or the Citizens' Advisory Council at the time the comprehensive plan was formulated and adopted or who were on the City Commission at the time the Appellants' petition was denied. Although these individuals testified that the City intended for the property to be designated preservation and maintained as open space, they presented no testimony rebutting the expert testimony that the property did not meet the definition of preservation. Cf. Section 28 P'ship, Ltd., 772 So.2d 616 (holding that developer did not meet its burden to show that County's action in denying its petition to amend comprehensive plan was so unreasonable and capricious as to not be fairly debatable in face of County's overwhelming evidence, including testimony from prominent experts, supporting its decision).
We conclude that the trial court erred in finding, based on the evidence that was before the City Commission at the public hearing on the Appellants' petition, that the City's denial of the Appellants' petition was fairly debatable. Reasonable persons could not differ in concluding that the Appellants were entitled to a small-scale amendment to the comprehensive plan because their property was improperly designated preservation.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Reversed and remanded.
VILLANTI, J., Concurs specially with opinion.
CASANUEVA, J., Dissents with opinion.
*109 VILLANTI, Judge, Concurring specially.
While recognizing the stringent requirements of the fairly debatable rule as eloquently set forth by the dissent, if there ever were a case in which the standard were to apply in favor of the landowner, this is that case. The underlying testimony was dominated by expert opinion germane to more than one topographical issue, including whether the soil content of the subject parcel was composed of the type that made it eligible to receive preservation classification. Absolutely all of the expert opinion and supporting data was unrefuted; i.e., that the preservation classification was imposed in error. See State Dep't of Transp. v. Myers, 237 So.2d 257, 261 (Fla. 1st DCA 1970). The citizens' input regarding their recollections and personal preferences for the uses, if any, to be made of the owner's land was simply conclusory in nature and insufficient here to overcome the objective and unrefuted expert input. Thus, in my view the fairly debatable rubicon was crossed long ago, and hence I fully concur in the majority opinion.
CASANUEVA, Judge, Dissenting.
Because I am not persuaded that our standard of review permits reversal in this case, I respectfully dissent.
In Coastal Development, 788 So.2d at 205, the Florida Supreme Court held that "the small-scale development amendment decisions made pursuant to section 163.3187(1)(c), Florida Statutes (Supp. 1996), are decisions which are legislative in nature and subject to the `fairly debatable' standard of review." The court further defined "fairly debatable standard of review" as a
highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety. In other words, an ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity.
Id. at n. 1 (quoting Martin County, 690 So.2d at 1295 (citations deleted)). Thus, where reasonable persons could differ as to the propriety of the planning action, it should be affirmed.
The Coastal Development case addressed a split among the district courts concerning the vehicle for and scope of review of the denial of a petition to amend a comprehensive plan. The question was whether the circuit court could exercise only its limited certiorari jurisdiction or could conduct a trial de novo. The supreme court concluded that a "challenge to a local government's decision on a small-scale development amendment may be commenced as an original action in the circuit court," Coastal Development, 788 So.2d at 210, and remanded for the circuit court to proceed on Coastal Development's action for declaratory and injunctive relief.
Therefore, in the original declaratory judgment action in the circuit court in this case, the trial court received and validly considered evidence in addition to the cold record of the various public hearings leading to the City's action. On our review, this court must decide whether, as a matter of law, the City's exercise of its legislative authority was at least fairly debatable. See Section 28 P'ship, 772 So.2d at 619. In assessing whether the circuit court's decision was legally correct, this court is no less constrained by the fairly debatable standard than was the circuit court and must also afford a high degree of deference to the governmental body's legislative decision. With those principles in mind, I would affirm the circuit court.
*110 Legislative decisions necessarily involve policymaking decisions or formulations. In this context, the City was required to decide whether to amend its established growth policies or to preserve the status quo, which necessitated an evaluation of "whether the small-scale development amendment being proposed meets the future land use and needs of the community." Fleeman v. City of St. Augustine Beach, 728 So.2d 1178, 1180 (Fla. 5th DCA 1998). For the circuit court to conclude that the City's decision was arbitrary and capricious, the Appellants carried the considerable burden of proving that the City's action was not based on any evidence that a reasonable mind would accept to support its conclusion. See Smith v. City of W. Palm Beach, 756 So.2d 166, 167 (Fla. 4th DCA 2000) (citing Town of Indialantic v. Nance, 400 So.2d 37, 40 (Fla. 5th DCA 1981), approved, 419 So.2d 1041 (Fla. 1982)).
To support their position, the Appellants focused on the lack of expert testimony before either the City Commission or the circuit court demonstrating that the designation of the property as "preservation" on the future land use map (FLUM) was appropriate. In the future land use section, the comprehensive plan describes the preservation land use category as follows:
The preservation Land Use Category is intended for areas considered to be vital for the maintenance and recharge of water resources, areas of unique or valuable topographic or subsurface features, and areas of significant environmental or ecological importance (e.g., coastal beach soils) which should be preserved.
The Appellants contend that the City did not and could not rebut its expert evidence that the primary determinant for whether property was designated preservation in the comprehensive plan depended upon its soil type, specifically, that lands containing what are known as "beach soils" were to be designated as preservation. Their experts asserted that the property proposed to be developed did not contain beach soils or beach sands. Other experts and officials opined that the area was not topographically, environmentally, or ecologically unique. Based upon this evidence, a consultant and a City planning official both determined that the preservation designation either derived from a scrivener's error in the drawing of the map or was predicated upon incorrect data.
In support of the denial of the petition, concerned neighbors and commissioners commented at the public hearing that granting the amendment would be inconsistent with the express goals and policies of the comprehensive plan. At the de novo trial on the petition for declaratory judgment, the City developed additional evidence concerning those goals. When the comprehensive plan was being formulated, a prime consideration behind designation of this particular property as preservation was to promote the general public policy of controlling beach erosion, a significant issue for the City of Bradenton Beach then and now. Members of the committee responsible for developing the plan walked up and down the beaches and designated the area preservation because of the dune construction on that site. That part of the beach had always been known as a "hot spot," where water would come across the road, not only during storms but with high tides; and the dunes helped minimize intrusion of water into the road. These witnesses rebutted any notion that the map had been incorrectly drawn.
In addition, a commissioner at the time the City enacted the comprehensive plan ordinance testified that the area was designated preservation not only to minimize beach erosion but also to achieve the City's *111 goal of obtaining grants for renourishing the beaches. A prerequisite to the beach renourishment grants is that the public be afforded as much access to and view of the water as possible. Another commissioner stated that he voted against this petition based upon his personal knowledge of the City's shorelines, particularly in the affected area. The Appellants' expert evidence had not overridden his concern for the health, safety, and welfare of neighboring citizens whose property might be subject to flooding if the Appellants' property were developed.
This very brief summary of the evidence leads me to the inescapable conclusion that the denial of the petition emanated from the City's valid exercise of its legislative powers. The Appellants have promoted a far too limited concept of the legislative powers of a city faced with a petition to amend its comprehensive plan. And, in reversing the circuit court, the majority has failed to afford the City the high degree of deference that appellate courts are required to pay governmental bodies when reviewing their legislative, policy-driven decisions.
By concentrating on the definition of "preservation," the Appellants have ignored the fact that the FLUM is only one component of any comprehensive plan:
The future land use element designates "proposed general distribution, location, and extent of the uses of land for residential uses, commercial uses, industry, agriculture, recreation, conservation, education, public buildings and grounds, other public facilities, and other categories of the public and private uses of land." . . . The FLUM is a pictorial depiction of the future land use element and is supplemented by written "goals, policies, and measurable objectives." The FLUM must be internally consistent with the other elements of the comprehensive plan.
Coastal Dev., 788 So.2d at 208 (citing, in nn. 20-21, § 163.3177(6)(a), (7), Fla. Stat. (Supp.1996)). Furthermore, "the comprehensive plan as a whole, consists of legislative policies that must be applied to determine what uses can be made of a specific tract of land." Thomas G. Pelham, Quasi-Judicial Rezonings, 9 J. Land Use & Envtl. Law 282, 300 (1994), cited in Martin County v. Yusem, 664 So.2d 976, 981 (Fla. 4th DCA 1995) (Pariente, J., dissenting).
Although I would hold that it is at least arguably debatable that the property in question was appropriately designated preservation on the narrow ground that it was within an area of "valuable topographic or subsurface features" and that it was an area "of significant environmental ... importance," I do not believe that the issue in this case was so limited. Like the Fourth District in Section 28 Partnership, 772 So.2d at 620, this court should consider whether the City presented any evidence, beyond a fair debate, that its decision to maintain the status quo in the land use plan was "reasonable from a planning, economic, environmental, and fiscal responsibility standpoint." Thus, appropriate evidence before the City and the circuit court could and did include other aspects of the City's legislative decision to deny the amendment, such as its legitimate interests in keeping the area undeveloped to accomplish its goals of diminishing beach erosion, minimizing flooding, preserving dune systems, encouraging the renourishment of its beaches, maintaining open areas, controlling traffic in the event of major storms, and limiting property damage from potential flooding.
The goals and policies the witnesses described are explicitly delineated in the comprehensive plan, and the FLUM is *112 consistent with the other elements of the plan. For instance, the glossary describes "preservation" as "[a]reas that need to be protected" and provides some examples of that concept, including "systems peculiar to the region ... such as beach and dune systems fronting the Gulf of Mexico." The executive summary to the plan describes "a number of unique ecosystems that can be found in the vicinity of the City of Bradenton Beach. This includes the Gulf side beaches and associated dune vegetation.. . ." Throughout the plan are references to the difficulties the City has faced with erosion of its beaches, the need to engage in beach renourishment projects, and its experience with flooding caused by tides and major storms. The explicit goal behind the plan's policies is to maintain the primarily residential character of this barrier island city while preserving one of its most significant featuresits beaches.
Finally, there is evidence in the record that the City considered the development rights of the owners of affected properties when it enacted the preservation designation. Essentially, in its effort to preserve the beaches, the City gave the owners the right to build developments of greater density on the bay side than on the gulf side. Thus, even though the City's action, in my view, constituted a lawful exercise of its legislative authority, to the extent that the City's decision also constituted a taking without just compensation and deprived the Appellants of all economically viable use of its land, the Appellants could maintain an action for inverse condemnation, provided that they have standing to do so. In such a case the City's burden would be significantly greater. Rather than relying simply on the validity of its exercise of legislative powers, the City would be required to identify specific principles of nuisance and property law that would prohibit the proposed use of the land without the payment of compensation. See Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).
In conclusion, I reiterate the opinion of the Fourth District in Section 28 Partnership, 772 So.2d at 621: "Where, as here, there is evidence in support of both sides of a comprehensive plan amendment, it is difficult to determine that the [City's] decision was anything but `fairly debatable.'" I would affirm the decision of the circuit court.
NOTES
[1] Small-scale development amendments to comprehensive plans are governed by section 163.3187(1)(c), Florida Statutes (2003).