MORRIS, Judge.
 

 City National Bank of Florida and Citi-vest Construction Corporation (the property owners) appeal a final judgment entered in favor of the City of Tampa (the City). This case involves the property owners’ application for a certificate of appropriate
 
 *295
 
 ness (COA) on a proposed condominium development which — after protracted litigation — was eventually granted by the City. The basis for the litigation was a claim that the property owners’ equal protections rights were violated because the City treated other similarly situated property owners more favorably during the zoning process and, as a result, the property owners here suffered damages. The City filed a motion to dismiss the property owners’ third amended complaint which the circuit court granted with prejudice. In doing so, the circuit court held, in relevant part, first that “section 1983 claims are barred as the interpretation of a zoning code will not support an action pursuant to 42 U.S.C. section 1983” and second that “there is no federally protected interest in a zoning decision.” For the reasons set forth herein, we disagree with the circuit court and we therefore reverse and remand.
 

 I. Background
 

 The property owners purchased a 1.76 acre vacant parcel located at the corner of Bayshore Boulevard and DeSoto Avenue in Tampa (the property), with the intent to construct a high-rise condominium project. Since 1987, the property has been classified as RM-75 high-rise zoning allowing for seventy-five condominiums per acre. This particular zoning classification is the most intense high-rise zoning available within the city and would allow for up to eighty-eight units on the property.
 

 At the time the property was zoned RM-75, the City also chose to include it within the Hyde Park Historic District which meant the property would be subject to the Architectural Review Commission (ARC). Before a construction project can proceed on property which is subject to the ARC’s control, the ARC must issue a COA determining that the proposed construction project meets specified aesthetic guidelines. The process of obtaining a COA is a separate and distinct process from zoning classifications.
 

 The “building envelope” within which a structure can be erected on property zoned as RM-75 is determined by using a specified height/setback ratio which is explained in the City’s zoning code. Here, the City approved the property owners’ initial plan to build a condominium which was twenty-eight stories in height, but the property owners voluntarily scaled the project back to twenty-four stories in an effort to appease opposition from the Historic Hyde Park Neighborhood Association (the Association).
 

 When the property owners sought the COA necessary to begin building, the ARC administrator informed them that as a condition precedent to applying for a COA, they were required to obtain certification from the City’s zoning administrator that the proposed project complied with the requirements for RM-75 zoning. However, the ARC administrator also told the property owners that the criteria for obtaining a COA was based only on the appearance of the building and that it was not in any way based on the confirmation regarding compliance with the zoning ordinances. And the property owners were not informed that the ARC administrator was a dues-paying member of the Association.
 

 In over 10,000 similar situations in the past — before the property owners submitted their plans to the City’s zoning administrator — the City had interpreted the zoning ordinances for a corner property like the one at issue here to require setbacks of twenty-five feet in the front yard, twenty feet in the rear yard, and seven feet in the side yard. However, apparently in response to pressure from the Association which had become openly opposed
 
 *296
 
 to the proposed project, the City zoning administrator — for the first time ever — interpreted the applicable zoning ordinances to require two twenty-five-foot front-yard setbacks. Based on this change in interpretation in conjunction with the height/setback ratio, the permissible height of the proposed project was reduced.
 

 Seeking to remedy the situation, the City’s planning staff recommended to the planning commission that the double front-yard setback interpretation be eliminated by an amendment to the zoning ordinances. The planning commission voted unanimously to approve such an amendment, and it was presented to the Tampa City Council for final approval and implementation. At the required first reading of the proposed amendment, no Association members were present and the Tampa City Council voted unanimously to proceed, without revisions, to the second reading. The meeting at which the second reading was conducted was different. Many Association members and area residents attended and voiced their overwhelming opposition to the proposed amendment. Consequently, no vote was taken and the meeting was continued until another day.
 

 At a third meeting, the Association suggested a different amendment which would impose the double front-yard setback only to the property in question but which would not impose the double front-yard setback on any other property thereafter. The city council voted to pass the amendment as proposed by the Association.
 

 The property owners subsequently redesigned their condominium project in light of the double front-yard setback requirement and resubmitted their plans to the zoning administrator. The zoning administrator confirmed the property owners were in compliance with RM-75 zoning so the property owners filed their application for a COA.
 

 Prior to the ARC’S final hearing on the COA application, the property owners met with ARC representatives on at least nine occasions to review the proposed project. Although some concerns were raised by ARC representatives (and addressed by the property owners), no one raised the height of the proposed condominiums as a concern.
 

 At the final hearing on the COA application, many Association members were present and voiced their objections to the height of the condominiums. After listening to the objections, one ARC board member moved to deny the COA application. Although it was unknown by the property owners at the time, this same board member was a member and former president of the Association.
 
 [1]
 
 The board member’s motion passed, and the COA application was denied.
 

 Following the denial of their COA application, the property owners once again redesigned their project, reducing the height of the condominiums to twenty stories. But the ARC rejected the property owners’ COA application a second time on the basis that the redesign was not significantly different. The property owners then appealed the ARC’S denial of their COA application to the city council. But at the meeting to address their appeal, Association members attended and again voiced their opposition. The appeal was unanimously denied by the city council.
 

 The property owners then sought relief in the courts, and notably, during the litigation, the property owners learned that
 
 *297
 
 the City — while denying the property owners’ application to build a 246-foot-high structure on the property — had approved other high-rise projects within the Hyde Park Historic District which were 235, 290, and 310 feet tall. The history of this litigation is protracted and complex, but it ultimately resulted in the property owners’ third amended complaint. In that complaint, the property owners sought damages and attorneys’ fees, in part, for violations of their equal protection rights pursuant to 42 U.S.C. section 1983. Although the circuit court dismissed the entire third amended complaint with prejudice, this appeal is limited to the dismissal of count II, dealing with the equal protection issue.
 

 II. Analysis
 

 We review de novo a circuit court’s order on a motion to dismiss.
 
 See Holden v. Bober,
 
 39 So.3d 396, 400 (Fla. 2d DCA 2010).
 

 a. A claim that a party’s equal protection rights have been violated during the zoning process is cognizable pursuant to section 1983.
 

 In dismissing count II, the circuit court determined that 42 U.S.C. section 1983 does not permit a plaintiff to bring an action based on the interpretation of a zoning code. In so holding, the circuit court cited to
 
 Paedae v. Escambia County,
 
 709 So.2d 575 (Fla. 1st DCA 1998), and
 
 Jacobi v. City of Miami,
 
 678 So.2d 1365 (Fla. 3d DCA 1996). However, those cases dealt with substantive due process claims rather than equal protection claims and, therefore, reliance on these decisions was in error. Federal courts have acknowledged that a property owner may raise an equal protection claim based on the application of a land use regulation.
 
 See City of Cleburne v. Cleburne Living Ctr.,
 
 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985);
 
 Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,
 
 450 F.3d 1295 (11th Cir.2006);
 
 Eide v. Sarasota County,
 
 908 F.2d 716, 722 (11th Cir.1990);
 
 Fry v. City of Hayward,
 
 701 F.Supp. 179, 181 (N.D.Cal.1988). Federal courts also acknowledge that a plaintiff may allege that it is a “class of one,” that is, that it “has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.”
 
 Village of Willowbrook v. Olech,
 
 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000);
 
 see also Flying J Inc. v. City of New Haven,
 
 549 F.3d 538, 546 (7th Cir.2008).
 

 Here, the property owners alleged that their proposed project was singled out and treated differently from other similarly situated properties with no rational basis offered by the City, thereby violating their equal protection rights. Such a claim is cognizable under section 1983.
 
 See Primera Iglesia Bautista Hispana of Boca Raton, Inc.,
 
 450 F.3d at 1304-1306;
 
 Cordi-Allen v. Conlon,
 
 494 F.3d 245 (1st Cir. 2007);
 
 LaTrieste Rest. & Cabaret Inc. v. Village of Port Chester,
 
 40 F.3d 587 (2d Cir.1994).
 

 Yet the City urges that there are other reasons to affirm. Specifically the City contends that an earlier determination by the circuit court, sitting in its appellate capacity, is sufficient to bar the section 1983 claim. We must therefore address that contention before we can determine whether a reversal is required on that basis.
 

 b. The circuit court’s determination that competent, substantial evidence supported the City’s denial of the COA is not sufficient to bar the equal protection claim, and the law of the case doctrine does not apply.
 

 In the initial stages of this litigation, the property owners sought certiorari review
 
 *298
 
 in the circuit court on the issue of whether there was competent, substantial evidence to support the denial of their application for a COA and whether, in denying the application, the City failed to apply the correct law. The circuit court determined that although there was competent and substantial evidence to support the city council’s decision, certiorari relief was still warranted because the city council allowed one portion of the
 
 zoning
 
 ordinances and the Hyde Park ARC Guidelines to 'trump the zoning administrator’s recommendations and another portion of the zoning ordinances. The circuit court held that in doing so, the city council departed from the essential requirements of the law. The circuit court’s determination was approved on second-tier certiorari review by this court.
 
 See City of Tampa v. City Nat’l Bank of Fla.,
 
 974 So.2d 408 (Fla. 2d DCA 2007).
 

 Now, the City argues that the circuit court’s finding in the certiorari action that the City’s denial was supported by competent and substantial evidence is legally dis-positive of whether the City had a rational basis for the denial under an equal protection analysis. The City cites
 
 MetroPCS Inc. v. City & County of San Francisco, Co.,
 
 No. C 02-3442 PJH, 2006 WL 358034 (N.D.Cal. Feb. 15, 2006), as support for its argument.
 

 MetroPCS
 
 involved the company’s efforts to obtain conditional use permits in order to install wireless communications facilities.
 
 Id.
 
 at *1. Although the permits were initially approved, the approvals were overturned by the board of supervisors after several residents complained.
 
 Id.
 
 After failing to obtain the permits, Me-troPCS filed suit, but on cross-motions for summary judgment, the district court granted the City and county’s motion on all but one ground.
 
 Id.
 
 Then, on appeal, the Ninth Circuit Court of Appeals affirmed except as to the question of whether the City unreasonably discriminated against MetroPCS.
 
 Id.
 
 The Ninth Circuit found triable issues of fact on that issue and remanded the case.
 
 Id.
 
 On remand, the district court noted that although the Ninth Circuit had previously found triable issues of fact on the equal protection claim, MetroPCS presented no “argument or authority as to why, or how, those triable issues counsel against a finding of rational basis.”
 
 Id.
 
 at *4. Instead, MetroPCS was arguing that the mere existence of triable issues was the proof of discrimination “without tailoring its argument to the ‘rational basis’ inquiry required by equal protection analysis.”
 
 Id.
 
 Accordingly, the district court held that the substantial-evidence finding by the Ninth Circuit “also supports a finding that the [zoning] [b]oard had a rational basis for its actions.”
 
 Id.
 

 We do not find
 
 MetroPCS
 
 persuasive. This case does not involve a motion
 
 for
 
 summary judgment. Nor does this case involve bare allegations of discriminatory treatment. Rather, this case involves detailed allegations of disparate treatment among similarly situated properties. We must therefore address whether the circuit court — sitting in its appellate capacity— already decided whether a viable equal protection claim had been stated and, in so doing, whether the law of the case doctrine applies to preclude this claim.
 

 The City argues that when the circuit court determined that the City’s denial was supported by competent, substantial evidence, that finding became the law of the case and, therefore, there can be no determination now that the city council’s denial of the COA was arbitrary and capricious for purposes of a section 1983 action.
 

 “Where .successive appeals are taken in the same case ... the doctrine of the law of the case applies.”
 
 Fla. Dep’t of
 
 
 *299
 

 Transp. v. Juliano,
 
 801 So.2d 101, 105 (Fla.2001) (internal citation omitted).
 

 The doctrine of the law of the case is ... a principle of judicial estoppel, but it is more limited and more flexible in scope. The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the circuit court, through all subsequent stages of the proceedings. Under the law of the case doctrine, a circuit court is bound to follow prior rulings of the appellate court as long as the facts on which such decision are based continue to be the facts of the case. Moreover, even as to those issues actually decided, the law of the case doctrine is more flexible than res judicata in that it also provides that an appellate court has the power to reconsider and correct an erroneous ruling that has become the law of the case where a prior ruling would result in a “manifest injustice.”
 

 Id.
 
 at 105-06 (internal citations omitted). The doctrine applies to questions of law that are
 
 “ ‘actually presented and considered
 
 on a former appeal,’ ” but it may also “foreclose subsequent consideration of issues implicitly addressed or necessarily considered by the appellate court’s decision.”
 
 Id.
 
 at 106 (quoting
 
 U.S. Concrete Pipe Co. v. Bould,
 
 437 So.2d 1061, 1063 (Fla.1983)).
 

 The property owners assert that there has been no authority cited which would apply the law of the case doctrine to a finding made by a circuit court sitting in its appellate capacity. However, we have located
 
 Dougherty v. City of Miami,
 
 23 So.3d 156 (Fla. 3d DCA 2009). That case involved a zoning decision by the Miami Zoning Board which was overturned by the city commission and then appealed to the circuit court, sitting in its appellate capacity.
 
 Id.
 
 at 157. The circuit court determined that the city commission departed from the essential requirements of the law in two respects, and the case was reversed and remanded to the city commission. After the city commission conditionally granted the requested permits, a first-tier certiorari petition was filed with the circuit court.
 
 Id.
 
 The circuit court denied the petition, and a second-tier cer-tiorari petition was then filed with the appellate court.
 
 Id.
 
 The Third District noted the applicability of the law of the case doctrine and held that “the 2006 circuit court appellate decision actually decided [the issue which had been brought to the circuit court in the first-tier certiorari petition]” and thus that the “2008 appellate decision failed to apply the correct law when it failed to enforce its prior decision.”
 
 Id.
 
 at 158.
 

 We agree with the Third District that a decision by a circuit court, sitting in its appellate capacity, becomes the law of the case on issues which were necessarily presented and decided in the prior action. But this does not end the analysis. Comparing the first amended petition/eom-plaint to the third amended complaint in this case, it is easy to see that equal protection claims were made in both complaints. Some of the allegations were similar, such as the fact that there had been over 10,000 lots in the subject area where the double front-yard setback requirement had not been enforced.
 

 Yet we note that the circuit court did not address the equal protection claim in its order granting the petition for writ of certiorari. And we reject the notion that the equal protection issue was implicitly addressed by the circuit court when it determined that the City’s denial of the COA was supported by competent, substantial evidence. The law of the case doctrine is inapplicable here because the facts of the case have changed since the
 
 *300
 
 certiorari petition was decided and the allegations in the third amended complaint present additional facts which, if true, could support an equal protection claim. As noted previously, it was not until litigation began that the property owners learned that other high-rise condominium projects had been approved within the Hyde Park Historic District. Because the alleged basis for the denial of the COA was the proposed project’s height, the property owners alleged in the third amended complaint that their equal protection rights were violated because their property had been treated differently than the other high-rise condominium projects. These allegations were not made in the first amended petition/complaint. Accordingly, the circuit court could still determine that the City’s actions in denying the COA were arbitrary and capricious and the law of the case doctrine does not bar the property owners’ equal protection claim. We therefore hold that the circuit court erred in dismissing with prejudice count II of the property owners’ third amended complaint.
 

 III. Attorneys’ fees
 

 The property owners have filed a motion for prevailing party attorneys’ fees pursuant to 42 U.S.C. section 1988(b), which provides for an award of attorneys’ fees to a prevailing party in any action or proceeding to enforce a provision of section 1983. Based on our determination that the property owners presented a viable equal protection claim in their third amended complaint, the property owners have prevailed on appeal. However it remains to be seen whether they will ultimately prevail below. We therefore conditionally grant their motion for appellate attorneys’ fees pursuant to section 1988(b) subject to their ultimately prevailing below.
 

 The City has moved for attorneys’ fees pursuant to section 768.79, Florida Statutes (2009), based on the City’s proposal for settlement. The City has also noted that it sought attorneys’ fees in the circuit court pursuant to section 1988(b).
 

 The property owners contend that the City is not entitled to attorneys’ fees under either section 1988(b) or section 768.79. This court has recognized that in the context of a civil rights action brought pursuant to section 1983, “ ‘[a] prevailing defendant may recover an attorney’s fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant.’ ”
 
 Moran v. City of Lakeland,
 
 694 So.2d 886, 886 (Fla. 2d DCA 1997) (quoting
 
 Hensley v. Eckerhart,
 
 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Of course, the City is not the prevailing party on appeal. Yet, even if the City is successful in defending the equal protection claim below, we do not believe that the property owners’ claim was “vexatious, frivolous, or brought to harass or embarrass” the City. Thus we do not believe section 1988(b) provides a basis for an award of appellate attorneys’ fees to the City.
 

 We also hold that the City is not entitled to appellate attorneys’ fees pursuant to section 768.79 because section 1988(b) preempts section 768,79.
 
 Moran,
 
 694 So.2d at 886-887. Consequently, we deny the City’s motion for appellate attorneys’ fees.
 

 IV. Conclusion
 

 Based on the unique facts of this case, we hold that the circuit court erred by determining that section 1983 does not recognize an equal protection claim and by dismissing count II of the third amended complaint with prejudice. We also hold that the claim is not precluded by the circuit court’s earlier ruling or by the law
 
 *301
 
 of the case doctrine. Finally, we conditionally grant the property owners’ motion for appellate attorneys’ fees and deny the City’s motion for appellate attorneys’ fees as explained herein.
 

 Reversed and remanded.
 

 WHATLEY and SILBERMAN, JJ., Concur.
 

 [1]
 

 . The property owners did not learn of the conflicts of interest involving the ARC administrator and ARC board member until after the filing of the underlying lawsuit.