NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PINELLAS COUNTY, FLORIDA, an )
Independent and Chartered Florida )
County, )
        Appellant, )
)
v. )      Case No. 2D16-3279
)
THE RICHMAN GROUP OF FLORIDA, )
INC., a Florida corporation, )
)
        Appellee. )
)

Opinion filed November 29, 2017.

Appeal from the Circuit Court for
Pinellas County; Walter L. Schafer, Jr.,
Judge.

Sylvia H. Walbolt, Chris W. Altenbernd,
and Nicholas A. Brown of Carlton Fields
Jorden Burt, P.A., Tampa; and James
Bennett, Pinellas County Attorney's Office,
Clearwater, for Appellant.

Landis V. Curry, III, Scott A. McLaren,
E.D. Armstrong, III, and Fred C. Marshall, II
of Hill, Ward & Henderson, P.A., Tampa, for
Appellee.


CRENSHAW, Judge.

Pinellas County appeals the final judgment awarding the Richman Group

of Florida, Inc., over $16.5 million in damages under 42 U.S.C. § 1983 (2012), based on

the trial court's conclusion that the County violated Richman's substantive due process and equal protection rights under the Fourteenth Amendment to the United States Constitution by denying Richman's proposed amendment to the County's land use plan. Because the trial court erred in concluding that the County had no rational basis to deny the proposed amendment, we reverse the final judgment. In light of this disposition, we do not reach the County's remaining arguments.

## I.    BACKGROUND

In 2012, Richman executed a contract to purchase 34.55 acres of land in the City of Safety Harbor subject to Richman obtaining certain government approvals to develop the land. At issue in this appeal is Richman's attempt to obtain approval of an amendment to the Countywide Future Land Use Plan that would have changed the land use designation of roughly sixteen acres of land from Industrial Limited (IL) to Residential Medium (RM) so that Richman could develop the property in a way that is not permitted on land with the IL designation.

### A. The Legislative Framework

Under the Special Act governing the County's land use plan, only a local government with jurisdiction over the subject property may submit a proposal to amend the plan to the Pinellas Planning Council. Ch. 90-396, § 10(4)(a), at 40, Laws of Fla. The Council reviews the proposal and makes a recommendation to approve, deny, continue, or alter it. Id. § 10(4)(a), (b), at 40. If the Council recommends approval, it forwards the proposal along with its recommendation to the Board of County Commissioners for a public hearing and vote in the Board's capacity as the County Planning Authority (CPA). Id. § 10(4)(d), at 40. If the CPA votes to deny the proposal,

- 2 -

any substantially affected person may seek a hearing before an Administrative Law Judge (ALJ) pursuant to Chapter 120, Florida Statutes; this hearing "is limited to a review of the facts pertaining to the subject property, the countywide future land use plan, and those rules, standards, policies, and procedures applicable thereto." Id. § 10(4)(d), (f), at 40-41. The hearing "is not the appropriate forum for a constitutional challenge." Id. § 10(4)(f), at 41. After the hearing, the ALJ's "recommended order shall be forwarded to and considered by the [CPA] in a final hearing. The basis for the [CPA's] final decision approving or denying the proposed amendment is limited to the findings of fact of the [ALJ]." Id. § 10(4)(d), at 40-41. The CPA's decisions under the act "are legislative in nature" and are subject to judicial review. Id. § 10(4)(g), at 41. Importantly, nothing in the Special Act mandates that proposed amendments that are consistent with the amendment review criteria must be granted by the CPA.

In line with this legislative framework, Richman applied to the City of Safety Harbor to initiate the process of amending the County's land use plan. After the Safety Harbor Commission approved Richman's proposal by a vote of 3-2, despite significant neighborhood opposition to it, the city submitted the proposal to the Council, which recommended approval by a vote of 8-5. The Council forwarded the proposal to the CPA along with its recommendation to approve the amendment.

In May 2013, the CPA considered Richman's proposal at a public hearing where hundreds of residents from the area surrounding the subject property expressed opposition to the amendment. The residents articulated specific, rational concerns that amending the land use designation to allow Richman's planned development of the property would cause traffic, transportation, safety, and economic problems. Members

of the CPA, as well as some of the residents, highlighted the scarcity of IL-designated land in the area and explained that removing the IL designation would harm the local economy because it would result in even less land available to support "target employers" that bring high-paying jobs to the County's residents. Citing Resolution 06-3, which set forth "the need to reserve industrial parcels for target employers" in Pinellas County, the CPA unanimously voted to deny the amendment.

### B. The Administrative Proceedings

As a person substantially affected by the CPA's denial, Richman obtained a hearing before an ALJ. The parties stipulated that the issue to be decided at that hearing was "[t]he manner in, and extent to, which the amendment is consistent" with the criteria in the rules governing amendments to the County's land use plan. The rules, promulgated pursuant to the Special Act, provide that "[i]n the consideration of a regular Countywide Plan Map amendment, it is the objective of these Countywide Rules to evaluate the amendment so as to make a balanced legislative determination based on" certain relevant considerations. The crux of the parties' dispute at this hearing was whether Resolution 06-3 was part of these relevant considerations. Agreeing with Richman, the ALJ resolved this dispute by finding that "Resolution 06-3 . . . is not a source of criteria applicable to the [a]mendment" because that resolution had not been "repeated, paraphrased, or adopted by reference in the Countywide Rules." Thus, to the extent that the CPA denied the amendment because it was inconsistent with the relevant considerations in the rules—namely, Resolution 06-3—the ALJ concluded that the amendment was indeed consistent with the relevant criteria. However, the ALJ did

not find, or otherwise conclude, that the CPA had to approve the amendment because it was consistent.

The ALJ did find that other sections of the rules were relevant to the dispute. Among those other sections, the ALJ highlighted section 2.3.3.6.1, which provides the following purpose behind the IL designation:

> It is the purpose of this category to depict those areas of the county that are now developed, or appropriate to be developed, in a limited industrial manner; and so as to encourage the reservation and use of consolidated areas for industrial and industrial/mixed use in a manner and location consistent with surrounding use, transportation facilities, and natural resource characteristics.

Regarding the consistency between the current use of the land and the purpose laid out in section 2.3.3.6.1, the ALJ found that the property currently has "numerous industrial buildings and structures associated with a citrus processing facility that is no longer in operation." The property is otherwise undeveloped. Commercial areas run along the southern and western borders of the property, whereas a residential area runs along its eastern border. To the north is a large, undeveloped area that separates the property from another residential area. According to the ALJ, "[t]he area is not part of a larger consolidated industrial area, but the Richman parcel, together with the IL parcel across 10th Street South, could function as a small industrial park." The ALJ found that the property "can accommodate certain 'target employers,' " but it noted that the IL designation also broadly authorizes "other uses that would be incompatible with surrounding uses." In other words, only a limited array of target employers could utilize the subject property in a manner consistent with the surrounding properties.

Although the ALJ ultimately recommended that the amendment be approved, noting that it "creates more points of consistency and fewer points of

inconsistency than the existing" designation, the ALJ expressly recognized that the final decision was left to the CPA, which had to make a "balanced legislative determination" whether to amend the plan or maintain the status quo. In making that legislative determination, the ALJ explained, "the CPA [was] not bound by the balance struck by the [ALJ], based on his perception of the differential importance of various findings." Nowhere in the ALJ's order did it find that the CPA had no rational basis to deny the amendment or that the preservation of IL land for target employers did not constitute a rational basis. Nor did the ALJ find that the existing designation was improper or that the current use of the property was inconsistent with its IL designation.

Pursuant to the Special Act, the proposed amendment, along with the ALJ's order, came before the CPA for a final public hearing in January 2014. Again, numerous residents voiced their opposition, highlighting the problems that would be caused if the amendment was approved. The CPA expressed its disappointment with the ALJ's finding that Resolution 06-3 was not an official criterion applicable to the proposal, explaining that it had always intended for the resolution to be a part of the criteria and it relied on "staff and others telling [the CPA], yes, everything is in sync." Recognizing that it was bound only by the ALJ's findings of fact and that it still had to make the ultimate legislative decision, the CPA voted unanimously to deny the proposed amendment.

### C. The § 1983 Proceedings

Instead of seeking judicial review of the CPA's denial as expressly authorized under the Special Act, Richman chose to sue the County for monetary damages under § 1983, alleging violations of its equal protection and substantive due

process rights as secured by the Fourteenth Amendment to the United States Constitution. In its equal protection claim, Richman asserted that the CPA treated it differently from similarly-situated applicants by denying its application "without any conceivable basis to support its actions, or any rational relationship between its denial and any legitimate government interests." On the substantive due process claim, Richman asserted that the denial "was an irrational, arbitrary, and capricious decision without any rational basis in fact or law." In support of both theories, Richman alleged that "the CPA was legally required to approve" the amendment at the final hearing once the ALJ found that the amendment was consistent with all relevant criteria and that, instead of applying the existing criteria, the CPA denied the amendment based on "significant political pressure." (Emphasis added).

After a bench trial, the trial court entered a final judgment in favor of Richman on both counts. The court explained that the equal protection claim required a ruling "as to whether the County had a rational basis for denying" Richman's amendment and that the same " 'rational basis' question [was] the principal issue involved in the arbitrary and capricious due process claim." See, e.g., Coniston Corp. v. Vill. of Hoffman Estates, 844 F.2d 461, 467-68 (7th Cir. 1988) (noting that the same rational basis test applies to equal protection and substantive due process challenges).

On the question of whether the County had a rational basis to deny the application, the trial court found that the ALJ "ruled that 'industrial land preservation' was not a legitimate reason/rational basis for denying the [a]mendment." The court also determined that the ALJ found the existing IL designation on the property was "not consistent" with the relevant criteria in the rules. The trial court characterized both of

these as findings of fact that were binding on the CPA under the Special Act and that were simply "ignor[ed]" by the CPA in denying the amendment. Expanding this perceived violation of the Special Act to the Constitutional dimension, the trial court concluded that "[b]ecause the CPA applied a non-existent criterion to deny Richman's Amendment, the County acted arbitrarily and capriciously in violation of Richman's Constitutional right to due process protections." But the trial court seemingly contradicted that conclusion by also finding that "[t]he evidence establishes that the CPA's final decision was based on a desire to appease the Safety Harbor residents, whose forceful opposition was brought to bear throughout the Countywide amendment process." Thus, the trial court apparently determined that both the constituents' rational objections and the economic impact of losing even more scarce industrial land suitable for target employers were not rational bases because those factors were not explicitly contained in the relevant criteria in the rules.

Based on its ruling that the County had no rational basis to deny the amendment, the trial court concluded that Richman was also entitled to relief on its equal protection claim because, "given that the relevant characteristics of the Richman Amendment and its comparators were the same, there is no rational basis for distinguishing between these amendments." The court noted that the "only meaningful difference" between Richman's amendment and its comparators was the "overwhelming neighborhood opposition," but it determined that such opposition was not a rational basis to deny the amendment.

The trial court rejected the County's argument that the CPA had the discretion to make a legislative decision to maintain the status quo based on the court's

determination that the CPA's discretion was not "unbridled" in light of the limitations placed on it by the Special Act and the CPA's own review criteria. Quoting only a portion of this court's holding in Island, Inc. v. City of Bradenton Beach, 884 So. 2d 107, 108 (Fla. 2d DCA 2004), the trial court acknowledged that the CPA's legislative decision was subject to the deferential "fairly debatable" standard of review, but it concluded that the CPA's decision to deny the amendment was not fairly debatable because the ALJ found both that the amendment satisfied the review criteria and that the current IL designation was not consistent with that same criteria.

The County now argues that the trial court erred in concluding that the ALJ's order established that the CPA could not rationally deny the amendment because, first, the ALJ made no such finding and, second, even under the limitations placed on it by the Special Act, the CPA still had the discretion to make the legislative, policy decision to maintain the status quo and its decision to do so was fairly debatable. Even if the trial court was correct that the Special Act mandated approval of the amendment, the trial court erred in equating this ostensible violation of state law to a violation of the Constitution because, under the exacting Constitutional standard, the CPA's decision was still rationally grounded in the public interest. The County maintains that the trial court similarly erred in granting relief on the equal protection claim because the court based its equal protection ruling on the same defective rational basis analysis it conducted on the substantive due process claim.

Richman responds that, in light of the limitations placed on it by the Special Act, the County had no discretion to deny the amendment once the ALJ issued its order. In fact, at oral argument, Richman's counsel emphasized that its position is

that the CPA had absolutely no discretion to do anything other than approve the amendment at that point. Richman contends that the County's decision to intentionally violate the Special Act in order to appease the residents, without more, amounts to arbitrary and capricious action in violation of the Constitution.

## II.    ANALYSIS

Turning first to the due process claim, to support its claim for damages under § 1983 based on a violation of its substantive due process rights, Richman had to show that it had been deprived of a constitutionally recognizable interest and that the deprivation was the result of arbitrary and capricious action on the part of the County. See Gardens Country Club, Inc. v. Palm Beach County, 712 So. 2d 398, 403 (Fla. 4th DCA 1998) (citing Exec. 100, Inc. v. Martin County, 922 F.2d 1536, 1541 (11th Cir. 1991)). The County raises no challenge to the trial court's finding that Richman had a constitutionally recognizable interest in the proposed amendment. As such, our review is limited to the question of whether the County's denial of the amendment was arbitrary and capricious.

"Substantive due process challenges are analyzed under the rational basis test; that is, a legislative act of the government will not be considered arbitrary and capricious if it has 'a rational relationship with a legitimate general welfare concern.' " Id. at 404 (quoting Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1214 (11th Cir. 1995)). "In other words, the Plaintiff must show the government's infringement was 'arbitrary, conscience shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised.' " 545 Halsey Lane Props., LLC v. Town of Southampton, 45 F. Supp. 3d 257, 266 (E.D.N.Y. 2014) (quoting Ferran v. Town of Nassau, 471 F.3d 363,

369-70 (2d Cir. 2006)). "In the zoning context, the issue is whether the [government's] action bore any substantial relation to the public welfare." Exec. 100, 922 F.2d at 1541. If the government's legislative decision is "at least debatable" there is no denial of substantive due process. Shelton v. City of College Station, 780 F.2d 475, 483 (5th Cir. 1986) (en banc). "Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999).

> [T]he conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less "distort" the state scheme under which they operate.

Creative Env'ts Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982) (emphasis added).

### A. The Fairly Debatable Standard

In resolving Richman's substantive due process claim, the trial court was required to apply the fairly debatable standard of review to the CPA's final decision. See Martin County v. Section 28 P'ship, Ltd., 772 So. 2d 616, 619 (Fla. 4th DCA 2000) (explaining that there is a "close relationship between the fairly debatable standard and the review of substantive due process claims" (citing Martin County v. Section 28 P'ship, Ltd., 676 So. 2d 532, 537 (Fla. 4th DCA 1996))). "The fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety." Martin County v. Yusem, 690 So.

2d 1288, 1295 (Fla. 1997). "This court reviews the trial court's application of the fairly debatable standard de novo." Island, 884 So. 2d at 108.

Because reasonable persons could differ as to the propriety of the CPA's decision, we conclude that the trial court erred in ruling that the CPA's decision to maintain the status quo was not fairly debatable. First, despite Richman's insistence below and before this court, nothing in the Special Act mandated the CPA's approval of the amendment once the ALJ found that the amendment was consistent with the review criteria in the rules. On the contrary, as explained by the ALJ, even amendments that are consistent with the relevant considerations in the rules are still subject to the CPA's final legislative decision under the Special Act.

Although the trial court recognized that the CPA was required to make the final legislative decision, the court concluded that the CPA's discretion in making that decision was limited by the Special Act and that the CPA violated those limitations by ignoring the ALJ's findings. But, in arriving at this conclusion, the trial court mischaracterized the ALJ's findings. For instance, in reviewing the ALJ's order, the trial court concluded that "the specific issue presented to [the ALJ] was whether the County had any rational basis for denying the Amendment" under the rules. However, the parties stipulated that the issue presented to the ALJ was the manner in, and extent to, which the amendment was consistent with the rules, not whether the County had any rational basis for denying the amendment. Even if the ALJ did conclude that the CPA had no rational basis to deny the amendment, that conclusion would not be binding on the CPA because the CPA was limited only by the ALJ's findings of fact, whereas the question of whether a decision has a rational basis for the purposes of a § 1983 claim is

- 12 -

a question of law.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1578 (11th

Cir. 1989).  Moreover, the hearing before the ALJ was "limited to a review of the facts

pertaining to the subject property, the countywide future land use plan, and those rules,

standards, policies, and procedures applicable thereto."  Ch. 90-396, § 10(4)(f), at 41.

Thus, under the plain language of the Special Act, the ALJ could not have ruled on the

question of whether the CPA had a rational basis on which to deny the amendment, and

the trial court erred in so concluding.

       The trial court also erred in ruling that the ALJ's findings established that

the existing classification was inconsistent with the criteria in the rules and relying on

that inconsistency to conclude that, because no reasonable person could agree that an

inconsistent designation should remain, the CPA's decision was not fairly debatable.  To

be sure, the ALJ did find that "[t]he IL category, with all potential uses allowed, is 'in the

broadest sense' inconsistent with single-family uses to the north and east" and that

"[t]he IL designation within the [Scenic Non-Commercial Corridor designation] is

inconsistent with the goal of the corridor and is a factor (not a requirement) in favor of

changing [the] current IL designation."  (Emphasis added).  When it conducted its own

balancing of the relevant considerations, the ALJ recommended approving the

amendment because "the amendment creates more points of consistency and fewer

points of inconsistency than the existing IL land use classification."

       However, the ALJ never found that the IL designation was not suitable for

the property, and at least some of the ALJ's findings support the CPA's decision to allow

the IL designation to remain on the land.  The ALJ found, for example, that the property

is currently developed in an industrial manner and that it was still feasible for the

property to be part of a small consolidated industrial park. These findings comport with the purpose behind the IL designation as stated in section 2.3.3.6.1 of the rules. And, while the ALJ did find that there were many uses allowed under the IL designation that would be inconsistent with surrounding uses, it did not find that all of the potential uses under the IL designation—including use for target employers—would be inconsistent. Indeed, it found that the subject property could nevertheless support certain target employers despite the surrounding limitations. Furthermore, pursuant to the Special Act, the ALJ's finding that the property could currently support target employers under the existing designation was a finding of fact that the CPA had to consider in making its final decision. Ch. 90-396, § 10(4)(d), at 40. In other words, although the ALJ found that Resolution 06-3 was not a criterion on which the CPA could conclude that the amendment was inconsistent with the rules, the ALJ did not find that the CPA was prohibited from otherwise considering the land's current suitability for target employers when making its final legislative determination. Accordingly, in the proper context of the ALJ's findings, the CPA's decision to deny the amendment and keep the land available for target employers was fairly debatable.

### i. The Trial Court's Application of Island

Applying its determination that the ALJ's order established that the existing designation was inconsistent with the criteria in the rules to this court's opinion in Island, 884 So. 2d 107, the trial court concluded that the CPA's decision was not fairly debatable. This, too, was error.

In Island, this court reviewed the trial court's finding that the City of Bradenton Beach's denial of two small-scale development amendments to the City's

- 14 -

future land use plan was fairly debatable.  884 So. 2d at 107-08.  The developers in Island sought amendments that would have changed the designation of their property "from preservation, a classification which permits no development, to medium/high residential/tourist in order to construct a duplex on each of their two lots."  Id. at 108. The evidence presented at trial showed that "the designation of the [developers'] property as preservation was erroneous because the property did not meet the definition of preservation [under the City's plan]."  Id.  The developers also presented evidence showing that the property had been taxed as residential property and that "the mayor's son had been issued a license to operate a sailboat rental business on the property, which activity is not allowed on preservation property."  Id.  According to the majority, no evidence rebutted the developers' evidence "that the property did not meet the definition of preservation."  Id.

Holding that the trial court erred in finding that the City's denial was fairly debatable, this court explained that "[r]easonable persons could not differ in concluding that the [developers] were entitled to a small-scale amendment to the comprehensive plan because their property was improperly designated preservation."  Id. (emphasis added).  "[R]ecognizing the stringent requirements of the fairly debatable rule," Judge Villanti specified that he concurred with the majority because "[a]bsolutely all of the expert opinion and supporting data was unrefuted; i.e., that the preservation classification was imposed in error."  Id. at 109 (Villanti, J., concurring).  Thus, this court's application of the fairly debatable standard in Island is limited to situations in which unrefuted evidence establishes that an existing land use designation is improper under the terms of the land use plan itself.

Here, although the ALJ found that the amendment would make the property more consistent with the relevant criteria for approving an amendment to the plan, the ALJ did not conclude that the current designation was imposed in error or that the property was being used in a way inconsistent with its current designation. As explained above, the ALJ's findings show otherwise. Unlike Island, the amendment at issue here sought to change the property's valid, existing designation so that Richman could develop it in a way it had never been used before. Because there was no unrefuted evidence showing that the subject property did not meet the definition of IL land under the County's land use plan or that the property was being used in a way that was not permitted under its existing designation, the trial court erred in concluding that Island established that the CPA's denial was not fairly debatable.

## B. The Rational Basis Question

Rejecting the County's argument that the CPA's decision was fairly debatable, the trial court determined that the CPA violated Richman's substantive due process rights both by denying the amendment based on the preference to preserve IL land, which the ALJ determined was not part of the relevant criteria for approving an amendment under the rules, and by making its decision simply to appease local residents. We address each alternative basis in turn.

To the extent that the trial court based its substantive due process ruling on its finding that the CPA was motivated by significant political pressure, the CPA's consideration of its constituents' concerns did not amount to a violation of the Constitution in this case. Without citing to any legal authority, the trial court determined that "neighborhood opposition is not a legitimate basis for denying a land use

application," even though it agreed that such opposition was a "meaningful difference" between Richman's amendment and its purported comparators. However, resident opposition, provided it is motivated by legitimate concerns, can provide a rational basis for a government's land use decision. See, e.g., Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1208 (11th Cir. 2007) ("In sum, the suggestion that the defendants violated the Equal Protection Clause by responding to the concerns of local citizens is, under these circumstances, without merit."); Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1387 (11th Cir. 1993) ("Merely because citizen input may not be a sufficient basis for a rational government land use decision in every instance does not mean it can never be a sufficient basis for such a decision. In most cases it will be. Where, as here, citizens consistently come before their city council in public meetings on a number of occasions and present their individual, fact-based concerns that are rationally related to legitimate general welfare concerns, it is not arbitrary and capricious for a city council to decide without a more formal investigation that those concerns are valid and that the proposed development should not be permitted." (citation omitted)); Greenbriar, 881 F.2d at 1579 ("[A] planning commission or a City Council is not a judicial forum; it is a legislative body held democratically accountable through precisely the forms of political suasion to which Greenbriar objects. . . . Here, there is no indication that Council members' attention to citizens' concerns in assessing Greenbriar's zoning plan deprived their decision of a rational basis." (citations omitted)); Estabrook, 680 F.2d at 832 ("Here it is merely indicated that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws."). In fact, the Special Act mandates notice to all affected residents and a public hearing before the

- 17 -

adoption of any amendment to the land use plan.  Ch. 90-396, § 10(5), at 41.  As such, even the Special Act itself contemplates the CPA's consideration of concerns from local residents.

Richman argues that the CPA could not consider the residents' objections because that consideration was not part of the relevant criteria in the rules, criteria which limited the CPA's discretion under the Special Act.  While Richman's argument may support a determination that the CPA violated state law, Richman fails to appreciate that it chose to bring this dispute into the Constitutional arena where "[i]t has long been established that zoning regulations will not be declared unconstitutional as violative of substantive due process unless they 'are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " Greenbriar, 881 F.2d at 1577 (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 394 (1926)).  This rigorous Constitutional standard requires more than a violation of state law.  See, e.g., Coniston Corp., 844 F.2d at 467 ("Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case; and it should go without saying that the something more cannot be merely a violation of state (or local) law."); Estabrook, 680 F.2d at 833 ("It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.").  That "something more" was simply not present in this case.  Here, hundreds of local residents articulated specific, rational concerns regarding the proposed amendment's effect on the general welfare.  Accordingly, even if the CPA violated the Special Act, it

did not violate the Constitution of the United States in considering legitimate input from affected residents.

In alternatively concluding that the CPA's application of the IL preference was arbitrary and capricious, the trial court relied on Everett v. City of Tallahassee, 840 F. Supp. 1528 (N.D. Fla. 1992), explaining that "[t]he same logic applies in this case, where Richman was subject to the application of an uncodified policy that never had been adopted as part of the applicable criteria."  We cannot agree.

Everett involved a § 1983 action brought by the owner of a 3.52-acre undeveloped property against the City of Tallahassee alleging, among other things, a violation of the owner's substantive due process rights.  840 F. Supp. at 1530.  The litigation arose after the City denied the owner's request to change the zoning of the property from residential to nonresidential use, citing an uncodified, standardless policy as the only reason for the denial.  Id. at 1537.  The owner also presented evidence showing that the City itself violated this same uncodified policy, as well as other zoning restrictions, in order to build City facilities on property adjacent to the owner's land.  Id. at 1541.  In analyzing the owner's claim, the court applied the principle that "[a] violation of state law, without more, is not a denial of due process of law."  Id. at 1543 (citing Coniston Corp., 844 F.2d 461).  Nevertheless, the court ruled that the uncodified policy was "unconstitutionally vague" and held that "[b]ecause no standards [were] set forth in the [policy], the City's arbitrary and capricious use of the policy violate[d] [the owner's] substantive due process rights."  Id. at 1546.

The same logic does not apply to this case.  Here, Richman made no argument, and the trial court made no ruling, that the policy to preserve IL land was

- 19 -

unconstitutionally vague.  There is also no indication that the uncodified policy in <u>Everett</u> was related to a legitimate welfare concern, whereas here, the policy to preserve IL land for target employers who bring high-paying jobs to the County is related to a legitimate fiscal concern.  Moreover, the City violated its own uncodified policy to suit its own purposes in <u>Everett</u>; Richman alleged no such conduct on the part of the County in this case.  Thus, unlike this case, <u>Everett</u> clearly concerned something more than a simple violation of state law.

Finally, we reject Richman's assertion that in reversing the final judgment at issue here we would need to overrule our decision in <u>City National Bank of Florida v. City of Tampa</u>, 67 So. 3d 293 (Fla. 2d DCA 2011).  The relevant portion of that decision simply discusses the cognizability of claims under § 1983 and contains no rational basis analysis.  <u>City Nat'l Bank of Fla.</u>, 67 So. 3d at 297.

## III.    RESOLUTION

As the trial court noted, the dispositions of both of Richman's Constitutional claims hinge on the question of whether the CPA had a rational basis to deny the amendment.  Having concluded that the trial court erred in ruling that the CPA's decision lacked a rational basis, we reverse the final judgment in its entirety.

Reversed.

LaROSE, C.J., and MORRIS, J., Concur.