[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13893
_____

D.C. Docket No. 2:11-cv-00661-SPC-UAM

DAVID KENTNER,
SUSAN A. KENTNER, et al.,

Plaintiffs-Appellants,

CYNTHIA A. BERMAN,

Plaintiff,

versus

CITY OF SANIBEL,
a Florida municipality,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 8, 2014)

Before MARTIN and FAY, Circuit Judges, and DUFFY,[*] District Judge.

MARTIN, Circuit Judge:

David Kentner, Susan Kentner, Richard W. Brown, Patricia S. Brown, Robert H. Williams, Diane R. Williams, Shirley A. Paulsen Florida Qualified Personal Residence Trust, Jerry's Enterprises, Inc. (d.b.a. Jerry's Foods, Inc.), Lowell T. Spillane, and Lighthouse 2011, LLC, are the plaintiffs in this action, and each owns property along the water in the City of Sanibel, Florida. They filed suit against Sanibel, challenging a municipal ordinance that prohibits them from building a boat dock or accessory pier on their properties. The District Court granted Sanibel's motion to dismiss the lawsuit. Plaintiffs now appeal the dismissal of their substantive due process claims. After careful review and with the benefit of oral argument, we affirm.

## I.

Plaintiffs allege the following in their Amended Complaint, which we accept as true. See Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010). In September 1993, Sanibel enacted Ordinance 93-18 (the Ordinance), amending Sanibel's Land Development Code. The Ordinance prohibited new construction of docks and accessory piers within an area fronting San Carlos Bay (Bay Beach

---

[*] Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, sitting by designation.

2

Zone).  The stated purpose of the Ordinance is to protect seagrasses that grow on the submerged lands in much of the Bay Beach Zone.

Plaintiffs came to own properties within the Bay Beach Zone after the Ordinance was enacted.  Because they own land that borders the high tide line, plaintiffs claim to have riparian rights, including "reasonable docking rights."  In their challenge to the Ordinance, plaintiffs argue that it (1) makes no specific finding as to the particular ecological conditions of the submerged lands, including whether they even have seagrasses on them; (2) makes no allowance for dock technology that would not harm seagrasses; (3) contains no basis for the specific boundaries of the Bay Beach Zone; and (4) prohibits any conditional use or variance.  Plaintiffs also complain that the true purpose of the Ordinance "is to serve the aesthetic preferences of certain interest groups and to artificially protect the property values of other property owners who are allowed to build docks."

Plaintiffs filed suit in state court on October 14, 2011, alleging in part that Sanibel's Ordinance "do[es] not substantially advance any legitimate state interest" and therefore violates plaintiffs' due process rights under the U.S. and Florida Constitutions.  Sanibel removed the case to federal court and asked the District Court to dismiss plaintiffs' federal claims and decline jurisdiction over their state claims.  The District Court granted Sanibel's motion.  Relevant to this appeal, the District Court dismissed plaintiffs' substantive due process claims because it found

3

that riparian rights are premised on state law and therefore are not fundamental rights that can support a substantive due process claim.  Plaintiffs' appeal challenges only the dismissal of these federal substantive due process claims. Contrary to the District Court's conclusion, Plaintiffs argue that the Supreme Court's decision in Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 125 S. Ct. 2074 (2005), held that property regulations that do not "substantially advance a legitimate state interest" give rise to constitutional challenges sounding in substantive due process law.

## II.

We review de novo the dismissal of plaintiffs' complaint under Rule 12(b)(6).  Silva v. Bieluch, 351 F.3d 1045, 1046 (11th Cir. 2003).  We also review questions of constitutional law de novo.  United States v. Duboc, 694 F.3d 1223, 1228 n.5 (11th Cir. 2012).  This Court may "affirm a district court's decision to grant or deny a motion for any reason, regardless of whether it was raised below." Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1059 (11th Cir. 2007).

## III.

### A.

We first consider plaintiffs' argument that Lingle v. Chevron U.S.A., Inc., created a new substantive due process test that applies to state-created property rights.  Lingle addressed the Fifth Amendment's Takings Clause.  544 U.S. at 536,

4

125 S. Ct. at 2080.  In Lingle, Chevron challenged a Hawaii state law that limited the amount of rent an oil company could charge a gas station lessee.  Id. at 533, 125 S. Ct. at 2078–79.  Applying the substantial advancement standard set forth in Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S. Ct. 2138, 2141 (1980), the District Court found Hawaii's law was an unconstitutional regulatory taking given its failure to substantially advance any legitimate state interest.  Lingle, 544 U.S. at 536, 125 S. Ct. at 2080.  The Ninth Circuit affirmed.  Id.  However, the Supreme Court reversed, finding the Agins "substantially advances" formula was not a valid takings test.  Id. at 548, 125 S. Ct. at 2087.

In rejecting the Agins test, the Supreme Court traced the "substantially advances" inquiry to due process origins.  Id. at 540–41, 125 S. Ct. at 2082–83 ("We conclude that this formula prescribes an inquiry in the nature of a due process, not a takings, test[.]").  Specifically, the Supreme Court noted that in adopting the substantial advancement test, Agins cited to two due process cases, Nectow v. Cambridge, 277 U.S. 183, 48 S. Ct. 447 (1928), and Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 (1926).  Lingle, 544 U.S. at 540–41, 125 S. Ct. at 2083.

Plaintiffs rely on Lingle's conclusions about the due process origins of Agins to argue that the Supreme Court, in rejecting the substantial advancement standard as a takings test, created a new type of property rights-based substantive

5

due process claim that employs that standard.  Specifically, plaintiffs quote <u>Lingle</u> to claim "that when a government action does not 'substantially advance a legitimate state interest,' the affected property owner's remedy is to sue the government for a violation of substantive due process, and not a taking."

But this goes beyond what <u>Lingle</u> held.  After reviewing its three established regulatory takings tests, the Supreme Court determined that the substantial advancement test was "not a takings[] test" and "that it has no proper place in our takings jurisprudence."  <u>Lingle</u>, 544 U.S. at 540, 125 S. Ct. at 2083.  Although the Supreme Court said that the substantial advancement test "prescribes an inquiry in the nature of a due process . . . test," <u>id.</u>, it did not reflect upon its substantive due process legal framework or any effect that its holding in <u>Lingle</u> had on that area of law.  Notably, the Court said nothing suggesting it was establishing a new "substantial advancement" test in the substantive due process context.

In support of their position, plaintiffs argue that other Circuits Courts have dramatically adjusted their property rights-based substantive due process doctrines in <u>Lingle</u>'s wake.  However, the cases plaintiffs point us to do not support their argument on appeal.  First, in most of these cases, the Circuit Courts were focused on the effect of <u>Lingle</u> on their Takings Clause precedent, not their substantive due process case law.  <u>See, e.g.</u>, <u>Rose Acre Farms, Inc. v. United States</u>, 559 F.3d 1260, 1277–82 (Fed. Cir. 2009) (discussing how the <u>Agins</u> inquiry is now obsolete

after <u>Lingle</u> and examining <u>Lingle</u>'s effect on regulatory takings cases).  Second, the Circuit Courts that did find <u>Lingle</u> affected their substantive due process jurisprudence had earlier precedent holding that <u>all</u> property rights-based substantive due process claims were preempted or supplanted by the Takings Clause.  <u>See, e.g.</u>, <u>Crown Point Dev., Inc. v. City of Sun Valley</u>, 506 F.3d 851, 852 (9th Cir. 2007) (holding that prior circuit precedent "that the Fifth Amendment's Takings Clause subsumes or 'preempts' substantive due process claims" was "undermined" by <u>Lingle</u>); <u>see also</u> <u>A Helping Hand, LLC v. Balt. Cnty., Md.</u>, 515 F.3d 356, 369 n.6 (4th Cir. 2008) (relying on <u>Lingle</u> in rejecting the argument that takings law supplants substantive due process claims based on property rights).

Unlike the Ninth Circuit, the Eleventh Circuit has already recognized property rights-based substantive due process claims based on legislative acts. <u>See, e.g.</u>, <u>Lewis v. Brown</u>, 409 F.3d 1271, 1273 (11th Cir. 2005).  As a result, <u>Lingle</u> did not impact this Court's substantive due process precedent.  We therefore reject, as did the District Court, plaintiffs' argument that <u>Lingle</u> created a new "substantial advancement" test for substantive due process claims based on state-created property rights.

B.

Even though <u>Lingle</u> did not establish a new property rights-based substantive due process inquiry, as we have noted, our precedent does allow such a

7

claim in certain circumstances.  So we next consider whether plaintiffs state a substantive due process claim under our existing case law.

It is well established that "[t]he substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'"  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S. Ct. 149, 152 (1937)).  Fundamental rights are those rights created by the Constitution. DeKalb Stone, Inc. v. County of DeKalb, Ga., 106 F.3d 956, 959 n.6 (11th Cir. 1997).  "Property interests, of course, are not created by the Constitution[, but rather] . . . by existing rules or understandings that stem from an independent source such as state law."  Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972); see also Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002).  As a result, there is generally no substantive due process protection for state-created property rights.

There is, however, at least one exception to this Circuit's general rule that there are no substantive due process claims for non-fundamental rights.  Where a person's state-created rights are infringed by a "legislative act," the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action.  Lewis, 409 F.3d at 1273.

8

There is no dispositive test to determine which actions are executive and which are legislative, because local governing bodies often do both. Id. ("While the actions of some government officials can easily be categorized as legislative or executive, for others, like county commissioners who act in both a legislative and executive capacity, sorting out which hat they were wearing when they made a decision can be difficult."). By the same token, our case law does give guidance on how to make this distinction.

Executive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one. McKinney, 20 F.3d at 1557 n.9 (citations omitted). This includes employment terminations or individual acts of zoning enforcement. Id.; see also Crymes v. DeKalb Cnty., Ga., 923 F.2d 1482, 1485 (11th Cir. 1991).

"Legislative acts, on the other hand, generally apply to a larger segment of— if not all of—society." McKinney, 20 F.3d at 1557 n.9. "[L]aws and broad-ranging executive regulations are the most common examples." Id. A legislative act also involves policy-making rather than mere administrative application of existing policies. DeKalb Stone, Inc., 106 F.3d at 959. Prospective "zoning-type decisions made by an elected body" are often legislative or quasi-legislative. 75 Acres, LLC v. Miami-Dade Cnty., Fla., 338 F.3d 1288, 1296 n.12 (11th Cir. 2003) (citation omitted).

9

In this case, the District Court correctly concluded that the riparian rights asserted by plaintiffs are state-created rights, not fundamental rights. See, e.g., Walton Cnty. v. Stop the Beach Renourishment, Inc., 998 So. 2d 1102, 1105 n.3 & 1111 n.9 (Fla. 2008) (considering waterfront owners' rights to be "a matter of state law"); Hayes v. Bowman, 91 So. 2d 795, 800 (Fla. 1957) ("The so-called common law riparian rights of upland owners bordering upon navigable waters have now been expressly recognized by [state] statute."). Based on this conclusion and its rejection of plaintiffs' Lingle argument, the District Court found that plaintiffs could not sustain a substantive due process claim and dismissed that count.

The District Court did not consider whether the legislative act exception applies in this case. Because plaintiffs are challenging the Ordinance on its face rather than contesting a specific zoning or permit decision made under the auspices of the Ordinance, we conclude that they are challenging a legislative act. See DeKalb Stone, Inc., 106 F.3d at 959. The Ordinance applies to all properties within the entire Bay Beach Zone, not just those owned by the plaintiffs. See McKinney, 20 F.3d at 1557 n.9. Because we consider a legislative act, then, we must go beyond the fundamental rights inquiry that ended the District Court's analysis.

Substantive due process challenges that do not implicate fundamental rights are reviewed under the "rational basis" standard. Fresenius Med. Care Holdings,

10

Inc. v. Tucker, 704 F.3d 935, 945 (11th Cir. 2013) ("When a challenged law does not infringe upon a fundamental right, we review substantive due process challenges under the rational basis standard."). We reject plaintiffs' invitation to create a new standard of review, which plaintiffs describe as "something more than traditional rational basis review," but below "intermediate scrutiny employed in gender-discrimination cases." As we have discussed, Lingle did not create a new substantive due process test for property rights-based claims. Given the Supreme Court's consistent warning that courts should avoid creating new substantive due process rights, we will follow our existing precedent, rather than create a new level of scrutiny. See, e.g., Chavez v. Martinez, 538 U.S. 760, 776, 123 S. Ct. 1994, 2006 (2003) (noting its "oft-stated reluctance to expand the doctrine of substantive due process"). After Lingle other Circuit Courts have also applied a version of rational basis scrutiny, rather than a higher "substantial advancement test" like that proposed by plaintiffs here. See, e.g., Samson v. City of Bainbridge Island, 683 F.3d 1051, 1058 (9th Cir. 2012) (holding that "to establish a substantive due process violation, the Samsons must show that Bainbridge's ordinances establishing and extending the moratorium were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare" (quotation marks omitted)); A Helping Hand, LLC, 515 F.3d at 372–73 (finding no abuse of discretion in jury instruction describing standard as

11

"deprivation of a property interest violates a plaintiff's due process rights if it was clearly arbitrary and unreasonable, with no substantial relationship to a legitimate governmental purpose" because it "covered" the County's requested instruction that a "claim can survive only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning").

Under rational basis scrutiny, governments "are not required to convince the courts of the correctness of their legislative judgments." Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S. Ct. 715, 724 (1981). "Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Id. (quotation marks omitted); see also Fresenius Med. Care Holdings, Inc., 704 F.3d at 945 (noting the "evidence casts doubt on the wisdom of the statute and suggests that perhaps a competitor out-lobbied Appellants before the Florida Legislature, but the evidence does not demonstrate that the Florida Legislature could not have possibly believed that [the statute] . . . would reduce conflicts and improve health care in the renal-dialysis field"). This standard is "highly deferential" and we hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances. Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001).

12

With these legal principles in mind, we conclude that plaintiffs cannot show Sanibel's Ordinance lacks a rational basis.  Plaintiffs themselves plead at least two rational bases for the Ordinance in their Amended Complaint:  (1) protection of seagrasses and (2) aesthetic preservation.  While plaintiffs do not agree with the wisdom or fairness of these rationales, this is simply not the test under a rational basis review.  See Fresenius Med. Care Holdings, Inc., 704 F.3d at 945.  Given these allegations and the "exceptional" burden plaintiffs must bear in challenging the Ordinance under the rational basis standard, we affirm the District Court's order on this alternate basis.

## IV.

Because plaintiffs' substantive due process claims fail to survive rational-basis scrutiny, we **AFFIRM**.