DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOLLY BONDAR** and **ALEXANDER BONDAR,**
Appellants,

v.

**TOWN OF JUPITER INLET COLONY,**
Appellee.

No. 4D19-2118

[May 5, 2021]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gerald Joseph Curley, Jr., Judge; L.T. Case No. 50-2009-CA-001377-XXXX-MB.

Bradley S. Gould of GrayRobinson, P.A., Miami, for appellants.

Michael T. Burke and Hudson C. Gill of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for appellee.

CONNER, J.

The appellants, Holly and Alexander Bondar ("the Owners"), appeal the dismissal of their counterclaims against the appellee, Town of Jupiter Inlet Colony ("the Town"), for lack of prosecution. The Owners argue that the trial court erred in dismissing their counterclaims because the Florida Rule of Civil Procedure 1.420 notice which triggered the dismissal was entered by a recused judge. We agree and reverse. The Town cross-appeals, arguing that the trial court erred in denying its motion for summary judgment as to four of the counterclaims raised by the Owners. As to two of those counterclaims (inverse condemnation and intentional interference with an advantageous business relationship), we affirm without discussion the denial of summary judgment. However, as to the two counterclaims alleging violations of substantive due process and equal protection, we reverse the denial of summary judgment.

## Background

The Owners owned one and leased two residences located within the Town. All three properties were acquired with the specific purpose of

renting them to others on a short-term basis. The Owners intended to eventually purchase the leased properties. The Owners listed the properties on various rental websites. From 2007 through 2009, the Owners rented the homes over 150 times, for periods ranging from one week to one month.

The Town had a single zoning designation: "RS Single-Family Dwelling District." There were no commercial, industrial, multi-family or other zoning districts located within the Town.

In 2008, a neighbor to one of the properties complained to the Town commission about the "short-term" manner in which the Owners were renting the property. In October 2008, the Town issued notices of violation to the Owners for each of the three properties, claiming that the Owners were renting the properties in a manner that violated the Town's Code of Ordinances.

*The Declaratory Relief Action*

In January 2009, the Town filed a declaratory relief action against the Owners ("the Dec Action"). The Town alleged that "the Town's Zoning Code provides that 'every residence shall be used only as a single-family dwelling . . . and no business activity is permitted except as allowed under the definition of home occupation.'" The Town further alleged that the Owners registered and utilized the properties as a "public lodging establishment" and "resort dwelling," and advertised the properties for rental on a short-term basis. The Town stated that it was seeking a judicial determination as to whether the Owners' use of the properties violated the Town's Zoning Code. The Owners counterclaimed, as discussed further below. However, in order to "streamline" the case resolution, the parties agreed that the Owners' counterclaims would be dismissed without prejudice, pending the trial court's resolution of whether the Owners' use of the properties violated the Town's Zoning Code.

Both parties moved for summary judgment in the Dec Action. In January 2011, the trial court entered partial summary judgment, denying the Town's motion for summary judgment and granting the Owners' motion. The trial court found "that the [Owners'] use of the residential dwelling for 'rental' purposes was not prohibited under the [Town's Zoning] Code." It found that it was "clear, [that] no restrictions on the length or frequency of the rental of property within the Town limits were set out in th[e relevant] provision."

Upon prevailing in the Dec Action, the Owners refiled their counterclaims. Relevant to this appeal, the Owners raised four counterclaims for damages based on: (1) inverse condemnation; (2) substantive due process violations prohibited by 42 U.S.C. § 1983; (3) equal protection violations prohibited by 42 U.S.C. § 1983; and (4) intentional interference with an advantageous business relationship. The Town filed a motion for summary judgment as to all four counterclaims. The trial court denied the Town's motion, which is the subject of the Town's cross-appeal.

*Disqualification*

In July 2015, the Owners filed a motion to disqualify the trial judge ("the Recused Judge"). The Recused Judge entered an order recusing himself, resulting in the case being reassigned.

In January 2018, the Recused Judge was reassigned to the division in which the instant case was pending. Between January 8, 2018 and December 21, 2018, there was no record activity in the case. Apparently not remembering his prior order of recusal, on December 21, 2018, the Recused Judge entered a "Notice of Lack of Prosecution, Court's Motion to Dismiss, and Order Setting Hearing" ("the Court's Notice"). The Court's Notice stated that there had been no activity in the case for ten months, and that, pursuant to Florida Rule of Civil Procedure 1.420(e), if there was no activity within sixty days of the notice, the trial court would dismiss the case on its own motion or upon the motion of an interested party. It also scheduled a hearing for March 1, 2019. The Court's Notice stated that, if there were no filings within the sixty-day grace period, then the Owners must file a showing of good cause, no less than five days prior to the March 1 hearing.

There was no record activity until February 28, 2019, when the Owners filed a motion to enforce the Recused Judge's prior recusal order and an emergency motion to cancel the hearing set for the following day. The same day the motions were filed, the Recused Judge entered two orders: (1) recusing himself again and reassigning the case; and (2) denying the Owners' emergency motion to reschedule the hearing scheduled for the following day as moot, stating that the hearing "has been cancelled based on" his recusal and reassignment of the case.

*Motion to Dismiss*

On March 20, 2019, the Town filed a motion to dismiss for lack of prosecution in accordance with rule 1.420(e). In the motion, the Town

3

argued that after the Recused Judge entered the Court's Notice, the Owners had sixty days to file record activity, and if not, then they had five days prior to the March 1, 2019 hearing to show good cause. It argued that the Owners did not satisfy either requirement in the requisite time period. The Town argued that since the Owners failed to meet the deadlines, the case must be dismissed.

The trial court held a hearing on the Town's motion. The Owners argued that the Court's Notice was entered by the Recused Judge, who they argued "essentially . . . abandoned" the notice because the Recused Judge "also entered an order on a motion to continue basically saying it was moot." The Town argued that even though it was entered by the Recused Judge, the Court's Notice was valid, because it was simply a ministerial notice tracking the language of rule 1.420(e).

The trial court entered an order dismissing the Owners' counterclaims for lack of prosecution. The trial court found that there had been no record activity within the ten months prior to the Court's Notice, and no record activity within the sixty days after. The trial court further stated that the fact that the Recused Judge entered the Court's Notice, even after he had previously recused himself, did not alter the outcome, because the Court's Notice was simply a ministerial act.

The Owners gave notice of appeal, and the Town gave notice of cross-appeal.

**Appellate Analysis**

*Dismissal of Counterclaims for Lack of Prosecution*

On appeal, the Owners argue that the trial court erred in dismissing their counterclaims because the Recused Judge entered the Court's Notice, which essentially initiated the dismissal procedure set forth in rule 1.420(e). The Town argues that the Court's Notice, although entered by the Recused Judge, was a ministerial act, and therefore, was validly entered. We agree with the Owners and reverse.

Rule 1.420(e) states:

> **(e) Failure to Prosecute.** In all actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred *for a period of 10 months*, and no order staying the action has been issued nor stipulation for stay approved by the court, *any interested*

4

*person, whether a party to the action or not, the court, or the clerk of the court may serve notice to all parties that no such activity has occurred. If no such record activity has occurred within the 10 months immediately preceding the service of such notice, and no record activity occurs within the 60 days immediately following the service of such notice, and if no stay was issued or approved prior to the expiration of such 60-day period, the action shall be dismissed by the court on its own motion or on the motion of any interested person, whether a party to the action or not, after reasonable notice to the parties, unless a party shows good cause in writing at least 5 days before the hearing on the motion why the action should remain pending.* Mere inaction for a period of less than 1 year shall not be sufficient cause for dismissal for failure to prosecute.*

Fla. R. Civ. P. 1.420(e) (emphases added). There is no question that there was no record activity for a period of ten months prior to the Court's Notice and no record activity within the sixty days immediately following the notice.

"Rule 1.420(e) has been interpreted as 'a mandatory rule'" and "'[u]nless a party can satisfy the exceptions provided for in the rule,'" the case shall be dismissed. *Publicidad Vepaco, C.A. v. Mezerhane*, 290 So. 3d 974, 977 (Fla. 3d DCA 2019) (quoting *CPI Mfg. Co. v. Industrias St. Jack's, S.A. de C.V.*, 870 So. 2d 89, 91 (Fla. 3d DCA 2003)). However, since the applicable time periods are calculated with reference to the date of entry of a notice of no activity for a stated period, such notice to all parties is a crucial and necessary step in initiating the dismissal procedure contemplated by rule 1.420(e). *See* Fla. R. Civ. P. 1.420(e). Therefore, if the Court's Notice was validly entered, dismissal pursuant to rule 1.420(e) was required; but, if the Court's Notice was invalidly entered, then dismissal under the rule was improper. To determine this, we look to the rules regarding disqualification.

The general rule is that "once an order disqualifying a judge is entered, the judge is prohibited from any further participation in the case." *Lea v. Wigton*, 705 So. 2d 723, 723 (Fla. 5th DCA 1998). "Any order entered by a recused judge is void," not merely voidable, and thus "has no force or effect and is a nullity." *Goolsby v. State*, 914 So. 2d 494, 496-97 (Fla. 5th DCA 2005). However, there is an exception to this rule:

While disqualification of the judge generally requires that the judge take no further action in the case, there is an exception

5

to this rule. The exception is where the trial judge orally announces [a] ruling, subsequently enters an order of recusal, and thereafter performs the ministerial act of simply entering a written order or judgment reflecting [the] prior oral ruling.

*Plaza v. Plaza*, 21 So. 3d 181, 182 (Fla. 3d DCA 2009).

The Town argues that the Court's Notice, filed by the Recused Judge, fits this exception, asserting the notice was simply a ministerial act,[1] and therefore, dismissal based on the notice was proper. We disagree.

"A ministerial act is distinguished from a judicial act in that in the former the duty is clearly prescribed by law, the discharge of which can be performed without the exercise of discretion." *City of Coral Gables v. State ex rel. Worley*, 44 So. 2d 298, 300 (Fla. 1950); *see also Act, Black's Law Dictionary* (11th ed. 2019) (defining "ministerial act" as "[a]n act performed without the independent exercise of discretion or judgment"). Here, the Court's Notice entered by the Recused Judge involved discretion, and therefore, was not a ministerial act.

Our supreme court has interpreted rule 1.420 according to its plain meaning. *See Chemrock Corp. v. Tampa Elec. Co.*, 71 So. 3d 786, 790 (Fla. 2011) (interpreting rule 1.420 according to "its plain meaning"). Rule 1.420(e) states:

> In all actions in which it appears on the face of the record that no activity by filing of pleadings, order of court, or otherwise has occurred for a period of 10 months, . . . the court, or the clerk of the court *may serve notice to all parties* . . . .

(emphasis added). "The word 'may' when given its ordinary meaning denotes a permissive term rather than the mandatory connotation of the

---

[1] One of the disagreements between the parties is whether a trial court has the authority to perform *any* ministerial act after recusal, or *only* the specific ministerial act mentioned above – entering a written order conforming with a prior oral ruling. Our supreme court has found at least one other ministerial act that a recused judge could properly perform. *See Parker v. State*, 873 So. 2d 270, 293-94 (Fla. 2004) (holding that the actions taken by a disqualified judge as part of the judge's administrative duties as the chief judge of the circuit were not void because "the actions taken by [the judge] after [the] recusal were purely ministerial in nature and resulted in no substantive rulings on [the appellant's] case"). However, with this opinion, we do not decide the scope of the exception to the general rule regarding void orders entered by a recused judge.

6

word 'shall.'" *Fla. Bar v. Trazenfeld*, 833 So. 2d 734, 738 (Fla. 2002). We find that the term "may" within rule 1.420 is discretionary, in two ways.

First, the rule is discretionary as to *who* may serve the notice. The rule allows any interested person, *or* the trial court *or* the clerk of court to serve the notice.[2] Second, the rule is discretionary as to *if and when* the notice is served. Although the rule fixes a minimum amount of time that must pass before such a notice is served (ten months), it does not require that the notice must be served at *exactly* ten months after record activity. For example, in this case, the trial court waited until a period of eleven months of no record activity before serving the notice. So, the trial court *chose* to serve the notice, and *chose* to do so eleven months after no record activity. Thus, the trial court exercised discretion in serving the Court's Notice, and therefore, the notice and its issuance was not a ministerial act. *See TBOM Mortg. Holding, LLC v. Brown*, 59 So. 3d 322, 324 (Fla. 3d DCA 2011) (Salter, J., dissenting) ("The word 'may' connotes a discretionary, not ministerial act . . . .").

Notably, the case relied upon by the trial court, *Whack v. Seminole Memorial Hospital, Inc.*, 456 So. 2d 561 (Fla. 5th DCA 1984), is not determinative here. The trial court cited to *Whack* for the proposition that a trial judge may partake in the ministerial act of "making a record of the previously entered oral pronouncement" even after recusal. *Id.* at 564. However, again, the action taken by the Recused Judge in this case was neither the act of reducing a previous oral pronouncement to writing, nor a ministerial act.

Therefore, we determine that the Court's Notice was not a ministerial act and was thus void when entered by the Recused Judge. This means that the Court's Notice "ha[d] no force or effect." *Goolsby*, 914 So. 2d at 496. Since the Court's Notice had no force or effect, it cannot serve as proper notice pursuant to rule 1.420(e) and does not support dismissal pursuant to the rule. *Cf. Campos v. Campos*, 230 So. 3d 553, 557 (Fla. 1st DCA 2017) ("This makes the point that if a final judgment, decree, or order is void, then all proceedings based on that void order are themselves void and nullities."). Thus, in this case, the requirements of rule 1.420(e) were not satisfied, and the trial court's order dismissing the Owners' counterclaims must be reversed. We therefore reverse the trial court's

---

[2] We do not determine here if dismissal would have been proper if the Recused Judge was reassigned to the case, but either an interested person or the clerk of court entered the operative notice.

order dismissing the Owners' counterclaims for lack of prosecution, and remand for further proceedings consistent with this opinion.

*Denial of the Town's Motion for Summary Judgment*

On cross-appeal, the Town challenges the trial court's order denying its motion for summary judgment as to all four counterclaims. As stated above, we affirm without discussion the denial as to two of the counterclaims but reverse the denial as to the remaining two counterclaims alleging violations of substantive due process and violations of equal protection.

The two counterclaims were filed pursuant to 42 U.S.C. § 1983 alleging violations of Fourteenth Amendment protections of substantive due process and equal protection. By its terms, 42 U.S.C. § 1983 provides for a cause of action for "person[s] within the jurisdiction" who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983 (2011).

"The general 'standard of review governing a trial court's ruling on a motion for summary judgment posing a pure question of law is de novo.'" *Shaw v. Tampa Elec. Co.*, 949 So. 2d 1066, 1069 (Fla. 2d DCA 2007) (quoting *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1074 (Fla. 2001)).

Substantive Due Process Violation

The Owners' counterclaim alleging violations of substantive due process pled that the Town's actions in issuing notices of violation and filing the declaratory action resulted in substantial interference and substantial deprivation of their "fundamental or constitutionally protected right to own, possess, use, dispose of, and transfer property."

The Due Process Clause of the Fourteenth Amendment has been interpreted to provide a "substantive component . . . that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* "It is important, therefore, to focus on the

allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the [government] allegedly did to deprive [petitioner] of that right." *Id.* Moreover, because "[s]ection 1983 'is not itself a source of substantive rights,' . . . [t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chakra 5, Inc. v. City of Miami Beach*, 254 So. 3d 1056, 1066 (Fla. 3d DCA 2018).

"[S]ubstantive due process has two strands—one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation." *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1297 (11th Cir. 2019). Regarding *fundamental rights*, the Eleventh Circuit has observed:

> The Due Process Clause protects "fundamental rights found to be deeply rooted in our legal tradition," *Washington v. Glucksberg*, 521 U.S. 702, 722, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772 (1997), "that is, rights that are 'implicit in the concept of ordered liberty,'" [*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)] (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288 (1937)). Absent a "compelling state interest" and an infringement "narrowly tailored" to serve that interest, the government may not violate those rights "*at all*, no matter what process is provided." *Glucksberg*, 521 U.S. at 721, 117 S. Ct. at 2268 (quoting *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1 (1993)). These rights include "most—but not all—of the rights enumerated in the Bill of Rights" and "certain unenumerated rights (for instance, the penumbral right of privacy[)]." *McKinney*, 20 F.3d at 1556.

*Id.* (second alteration in original). Notably, "fundamental rights in the constitutional sense, do not include 'state-created rights.'" *Id.* Thus, "areas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney*, 20 F.3d at 1556 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)). "Property interests . . . are not created by the Constitution[, but rather] . . . by existing rules or understandings that stem from an independent source such as state law." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1279 (11th Cir. 2014) (second and third alterations in original) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Important to

the resolution of this case is the principle that "land use rights, as property rights generally, are state-created rights." *Hillcrest Prop., LLP*, 915 F.3d at 1298 (quoting *DeKalb Stone, Inc. v. Cnty. of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997)).

As noted above, the first step in the analysis is to identify the fundamental right the substantive due process counterclaim alleges was violated. Although the Owners asserted below and on appeal that the fundamental right violated was the "right to own, possess, use, dispose of, and transfer property," a close review of the counterclaim reveals otherwise. Under the plain facts alleged in the counterclaim, it cannot be said that the actions of the Town (issuing notice of violations and filing the Dec Action) impeded upon the Owners' right to *themselves* "own, possess, use, dispose of or transfer" a fee ownership interest in any of the three properties. What the Town was seeking to preclude was the ability of the Owners to allow *others* to use the properties, which is an incidental property right controlled by state law.

In rejecting the argument that "the right to freely use one's property is fundamental and implicit in the concept of ordered liberty," the Eleventh Circuit has said:

> It is true that property rights have been important common law rights throughout history and that they are protected in many situations by procedural due process. Nevertheless, common law rights are not equivalent to fundamental rights, which are created only by the Constitution itself. *See, e.g.,* *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S. Ct. 507, 515, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1110, 115 S. Ct. 898, 130 L. Ed. 2d 783 (1995). Any right in the nonconforming use is a state-created right. As a result, Appellant's fundamental rights argument fails.

*DeKalb Stone*, 106 F.3d at 959 n.6. The Owners have not cited any cases that hold that the right to rent property to others is a fundamental right in the constitutional sense, and we have been unable to find any such authority. Instead, the cases cited by the Owners on appeal address principles applicable to the Fifth Amendment and other constitutional rights, rather than fundamental rights in the context of the Fourteenth Amendment. Thus, we conclude the Owners' counterclaim alleging a violation of substantive due process fails because they cannot demonstrate

the Town violated a fundamental right protected by the Fourteenth Amendment.

But the substantive due process violation analysis does not end there because the Eleventh Circuit has acknowledged that there is an exception to the general rule that there are no substantive due process claims for non-fundamental rights. "Where a person's state-created rights are infringed by a 'legislative act,' the substantive component of the Due Process Clause generally protects that person from arbitrary and irrational governmental action." *Kentner*, 750 F.3d at 1279–80. Stated another way, the Eleventh Circuit has said that "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir. 2003).

Although the delineation between which actions are executive and which are legislative can sometimes be difficult to discern, the Eleventh Circuit has noted that "[e]xecutive acts typically arise from the ministerial or administrative activities of the executive branch and characteristically apply to a limited number of people, often to only one," and typically include zoning enforcement, whereas "[l]egislative acts, on the other hand, generally apply to a larger segment of—if not all of—society" and "involve[] policy-making rather than mere administrative application of existing policies." *Kentner*, 750 F.3d at 1280 (citations omitted).

In the substantive due process counterclaim, the Owners alleged that the Town Council directed its police chief to issue the notices of violation and subsequently filed the Dec Action. Those actions by the Town Council as a legislative body were *executive* actions, rather than *legislative* actions because: (1) the actions sought enforcement of the zoning code; and (2) the actions affected only the Owners and not a larger segment of society. Such executive actions by the Town Council would only be substantive due process violations if they were "arbitrary and irrational governmental action[s]" or "arbitrary or [conscience] shocking in a constitutional sense." *Id.* at 1279–80; *Waddell,* 329 F.3d at 1305. Here, the Owners failed to present sufficient evidence of such characteristics to survive summary judgment in favor of the Town on the counterclaim alleging substantive due process violations.

Equal Protection Violation

Next, we address the Town's contention that the trial court erred in denying its summary judgment motion regarding the Owners'

counterclaim alleging equal protection violations. The counterclaim alleges the equal protection violation as improper selective enforcement. In order to prove improper selective enforcement under the equal protection clause:

> [A] plaintiff must proffer sufficient factual allegations to show that: (1) plaintiff was treated differently from other similarly situated individuals, and (2) such differential treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1411 (S.D. Fla. 2014). Alternatively, where a plaintiff does not allege membership in a class or group, the plaintiff can bring a "class of one" equal protection claim, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Since the Owners do not allege that they were discriminated against as part of a class or group, their claim constitutes a "class of one" equal protection claim.

As noted by the Second District, "[f]ederal courts have acknowledged that a property owner may raise an equal protection claim based on the application of a land use regulation." *City Nat'l Bank of Fla. v. City of Tampa*, 67 So. 3d 293, 297 (Fla. 2d DCA 2011). To prove such a claim, "the plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1307 (11th Cir. 2009). The claim may also be established by proof that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *City Nat'l Bank of Fla.*, 67 So. 3d at 297 (quoting *Vill. of Willowbrook*, 528 U.S. at 564).

As to the first element, our review of the record reveals that the Owners sufficiently pointed to similarly situated individuals, at least enough to raise a genuine issue of material fact. However, we find that there is no basis to conclude that the Town unequally applied the ordinance *for the purpose* of discriminating against the Owners or that there was no rational basis for the Town's actions. The Owners alleged that the Town "targeted" them, "intentionally prosecuted" them, and "engaged in a spiteful effort to harm" them. However, we find no summary judgment evidence to support

12

that the Town took any action with a *discriminatory purpose.*  *Cf. E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987) ("Even arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  Therefore, the trial court erred in denying the Town's motion for summary judgment as to this counterclaim as well.

## Conclusion

The trial court erred in dismissing the Owners' counterclaims for lack of prosecution, because the Recused Judge served the Court's Notice.  This rendered the Court's Notice a nullity, and thus could not provide the requisite notice pursuant to rule 1.420(e).  The trial court also erred in denying the Town's motion for summary judgment as to the Owners' separate counterclaims alleging 42 U.S.C. § 1983 violations of substantive due process and equal protection.  As for the substantive due process violation counterclaim, the Owners' right to rent the properties to others is not a fundamental right for purposes of substantive due process.  Additionally, the executive actions by the Town were not arbitrary, irrational or conscience shocking so as to violate the Fourteenth Amendment.  As to the equal protection violation counterclaim, the Owners failed to demonstrate that the Town acted with a discriminatory purpose.  For the foregoing reasons, we: (1) reverse the trial court's order dismissing the Owners' counterclaims for lack of prosecution; and (2) reverse the trial court's order denying the Town's motion for summary judgment as to the Owners' separate counterclaims alleging substantive due process and equal protection violations. We remand for the trial court to enter partial summary judgments in favor of the Town as to those two counterclaims.  We affirm the trial court's denial of the Town's motion for summary judgment as to the Owners' counterclaims for inverse condemnation and intentional interference with an advantageous business relationship.  We remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, remanded for further proceedings.*

CIKLIN and KLINGENSMITH, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**