[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13097

_____

WILLIAM E. COREY,
U.S. ENTERPRISES, INC.,

                    Plaintiffs-Appellants,

*versus*

ROCKDALE COUNTY,
a political subdivision of the State of Georgia,
OZ NESBITT, SR.,
SHERRI L. WASHINGTON,
DOREEN WILLIAMS,
individually and as the Board of
Commissioners of Rockdale County,
DIRECTOR OF PLANNING AND DEVELOPMENT OF
ROCKDALE COUNTY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-03918-MLB

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

This case is about a piece of property in Rockdale County, Georgia that William Corey wanted to develop into a truck stop. After twice being denied permits by the County to build a truck stop on his property, Corey sued the County and its officials under the Surface Transportation Assistance Act for an injunction to get a permit, for taking his property without just compensation, and for violating his rights to due process and equal protection. The district court granted judgment on the pleadings for the County and its officials. After careful consideration, and with the benefit of oral argument, we dismiss as moot Corey's appeal of the judgment on his injunction claim under the Surface Transportation Assistance Act and affirm the judgment as to his other claims.

## FACTUAL BACKGROUND

In 1996, Corey and his company, U.S. Enterprises, bought the first piece of what would become thirty-five acres of property

in Rockdale County, Georgia.  The property sat near the intersection of Interstate 20 and Sigman Road, which is a busy commercial corridor where cars and trucks regularly stop.  For as long as Corey owned it, the County zoned the property as "C-2," which allowed for the construction of convenience stores and gas stations but prohibited truck stops.  Even so, for the next twenty-five years, Corey sought to build a truck stop on the property.

*1999 Permit Application*

In 1999, Corey asked the County if its zoning regulations permitted him to build a truck stop on his property.  The County said no and informed Corey that truck stops were not a "specifically designated" use for C-2 properties under the then-existing zoning ordinance.  In response, Corey proposed an amendment to the zoning ordinance that would allow truck stops.

While the County considered the amendment, Corey filed an application for a permit to build a "travel plaza" that would sell fuel to cars and heavy trucks.  He argued that the "travel plaza" was not a truck stop because the C-2 zoning ordinance permitted selling fuel.  The County returned the permit application without consideration.  Corey sued the County in state court for mandamus relief to force it to consider the application, but the state court ruled against him.  And the County eventually rejected Corey's proposed amendment.  Thus, Corey had to scrap his "travel plaza" plan.  This caused him to lose out on a lease agreement with a prospective tenant and on the money that would have come with it.

Undeterred, Corey continued to develop his property in the hope of building "a convenience store which sold fuel to automobiles and heavy trucks." He expanded the property by buying an adjacent tract of land closer to the interstate and invested $140,000 to obtain sewer access.

*2006 Ordinance*

In 2006, the County adopted a new C-2 zoning ordinance. The 2006 ordinance now explicitly prohibited truck stops and barred any combination of buildings that would "effectively create a truck stop." "Truck stop" was defined as:

> [A]ny building, premises, or land in which or upon which a business, service, or industry involving the maintenance, servicing, storage, or repair of heavy trucks and similar commercial vehicles is conducted or rendered, including the dispensing of motor fuel or other petroleum products primarily for such heavy trucks and similar commercial vehicles and the sale of accessories or equipment for heavy trucks and similar commercial vehicles, as well as overnight accommodations, showers, overnight customer parking, or restaurant facilities for the use of crews of heavy trucks and similar commercial vehicles.

The 2006 ordinance allowed for gas stations within C-2 zones, but they could not be "combined with any other use(s) or facility so as to create a truck stop."

*2019 Permit Application*

In 2018, Corey contracted with QuikTrip to construct a "travel plaza" on 6.7 acres of his property near Interstate 20. Under the agreement, QuikTrip would pay Corey to lease the land.

The agreement called for a 7,000 square foot convenience store with eighteen to twenty gasoline dispensers out front. Behind the store, there would be six to eight fuel pumps for heavy trucks, truck scales, and parking for ten heavy trucks. The agreement also called for sixty-to-seventy parking spots for cars, and large canopies and wide turning areas to accommodate heavy trucks.

Corey worked with the County's director of planning and development to draft a proposed amendment to the 2006 ordinance. The amendment would introduce a new "travel plaza" zoning category that would permit the QuikTrip project. The amendment won the support of the County's planning commission, which recommended adoption by the County's board of commissioners. But the board unanimously rejected the amendment.

In 2019, roughly a year after the amendment was rejected, Corey applied for a construction permit to build the QuikTrip travel plaza. The County rejected Corey's permit application because it sought to build a truck stop prohibited by the 2006 ordinance. Corey appealed the denial to the County's internal appeals board, which—after holding a hearing—affirmed the County's decision.

Then, Corey filed a petition in state court for certiorari, mandamus, and injunctive and declaratory relief. The state court dismissed most of Corey's claims, but it found that the 2006 ordinance's definition of "truck stop" was impermissibly vague. The County appealed to the Supreme Court of Georgia, which reversed. *See Rockdale Cnty. v. U.S. Enters., Inc.*, 312 Ga. 752 (Ga. 2021). On remand, the state court affirmed the County appeals board's decision, concluding that there was substantial evidence that Corey sought to build a truck stop prohibited by the 2006 ordinance. Corey appealed that decision, but the Georgia appellate courts denied review.

### 2021 Ordinance

In 2021, while the state courts were still considering the denial of Corey's 2019 permit application, the County amended the C-2 zoning ordinance to define a prohibited "truck stop" as:

> A gasoline station or gasoline station with convenience store that dispenses diesel or any other fuel or petroleum product used by heavy trucks, and which includes one or more of the following additional facilities:
>
> (1) A parking [sic] designated for use by heavy trucks.
> (2) Weight scales designed for use by heavy trucks.
> (3) A raised canopy used primarily or exclusively by heavy trucks to dispense diesel or other heavy truck fuel that is separate or distinct from the canopy or area used to dispense fuel to cars.

(4) A restaurant or fast-food restaurant which includes either dine-in facilities or a drive-through window or both.

(5) Facilities for the maintenance and/or repair of heavy trucks.

(6) Facilities for the overnight storage of heavy trucks.

(7) Shower facilities made available to crews of heavy trucks.

(8) Graded hard surface areas designed specifically to accommodate the wide turning radius utilized by heavy trucks.

(9) Specifically designed entrances and exits to accommodate access by numerous heavy trucks and/or

(10) Any other specialized facility or amenity designed specifically for the use of heavy trucks and/or the crews of heavy trucks.

## PROCEDURAL HISTORY

In 2022, before his state case ended, Corey sued the County, its board of commissioners (Oz Nesbitt, Sherri Washington, and Doreen Williams), and its planning director (Kalanos Johnson). His complaint raised four claims.

Corey first claimed that the County's 2021 ordinance was preempted by the Surface Transportation Assistance Act. As relief, he sought to enjoin the enforcement of the ordinance.

He next alleged that the 2021 ordinance violated the Fifth Amendment's Takings Clause because it deprived him of the use

of his property without just compensation.[1]  Third, Corey asserted that the 2021 ordinance was an arbitrary and irrational legislative act that violated the substantive component of the Due Process Clause.  Finally, Corey claimed that the defendants violated the Equal Protection Clause by denying his 2019 permit application while allowing others to build gas stations that serviced heavy trucks.[2]

After answering Corey's complaint, the defendants moved for judgment on the pleadings.  The district court granted the motion and entered judgment for the defendants.  This is Corey's appeal of the judgment.

## STANDARD OF REVIEW

We review a district court's judgment on the pleadings de novo.  *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022).  "Judgment on the pleadings . . . is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).  In reviewing a judgment on the pleadings, we accept the factual allegations as true and view them in the light most favorable to the non-moving party.  *Samara*, 38 F.4th at 149.

---

[1] We understand the complaint to allege a takings claim based only on the 2021 ordinance.

[2] Corey's complaint also alleged a procedural due process claim, but he does not press that claim on appeal, so we do not discuss it further.

## DISCUSSION

We divide our discussion into four parts, with each part addressing one of Corey's four claims. We begin with Corey's claim for injunctive relief under the Surface Transportation Assistance Act.

### The Surface Transportation Assistance Act Claim

After Corey appealed the district court's judgment, he notified us that he sold the property that he had been trying to develop into a truck stop. This sale, Corey concedes, mooted his claim under the Surface Transportation Assistance Act because the only relief the claim sought was to enjoin the 2021 ordinance so that he could build a truck stop on the property. Now that he no longer owns the property, Corey acknowledges that we cannot grant him the injunction that he sought.

We agree. *See Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (explaining that a claim becomes moot when it no longer presents a live controversy for which a court can grant meaningful relief). Thus, we dismiss this part of Corey's appeal and vacate the portion of the judgment that addresses the Surface Transportation Assistance Act claim. *See De La Teja v. United States*, 321 F.3d 1357, 1364 (11th Cir. 2003) ("[W]hen an issue in a case becomes moot on appeal, the court not only must dismiss as to the mooted issue, but also vacate the portion of the district court's order that addresses it.").

*The Takings Claim*

Corey's takings claim has a different jurisdictional problem. He alleges that the 2021 ordinance was an unconstitutional taking without just compensation under the Fifth Amendment's Takings Clause. But a takings claim does not ripen "until a local government decides how it intends to apply a broad, locality-wide regulation to a specific piece of property." *Lozman v. City of Riviera Beach*, 119 F.4th 913, 917 (11th Cir. 2024) (cleaned up). That is, for a takings claim to be ripe, "the government entity charged with implementing the regulations" must "reach[] a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled in part on other grounds by Knick v. Twp. of Scott*, 588 U.S. 180 (2019). This is the finality requirement. "Ordinarily 'no final decision exists until an aggrieved landowner has applied for at least one variance to a contested zoning ordinance.'" *Lozman,* 119 F.4th at 918 (cleaned up).

Here, Corey did not apply for a permit or variance under the 2021 ordinance. Before we can determine whether a taking occurred, the County must be given "the opportunity, using its own reasonable procedures, to decide and explain the reach" of the 2021 ordinance. *Id.* at 917 (quotation omitted). "Because [Corey] has not received a final, written denial of an application for the development of his land from [the County], his claim is not ripe for judicial review." *Id.* at 914–15.

Corey acknowledges the ripeness problem but gives us two reasons why the finality requirement does not apply to his takings claim. First, he asserts that submitting a new permit application would have been futile because he has been fighting with the County for over twenty years about building a truck stop. Second, he contends that there is no need to seek a permit because the ordinance specifically targets his property. Both arguments miss the mark.

First, the futility exception to the finality requirement applies where "the repeated submission of development plans . . . would be futile." *Id.* at 918 (quotation omitted). But here, while Corey applied for permits in 1999 and 2019, those applications were governed by different ordinances. Corey has never applied for a permit under the 2021 ordinance, which defined the truck stop prohibition more precisely than earlier zoning ordinances. If Corey had applied under the 2021 ordinance, it would not have been a "futile repeated application," because it would have been the first opportunity the County had to apply the 2021 ordinance to his property. *Id.* at 919 (quotation marks omitted).

We rejected a similar futility argument in *Lozman*. There, we refused to apply the futility exception to a property owner who had not sought a permit to develop his land, even though he had been battling the city on other fronts about developing the same property for years. *Id.* Likewise here, "the futility exception does not excuse [Corey's] failure to apply for a final decision" from the

County just because he has had a long-standing fight with the County about developing his property. *Id.* at 918.

Second, while Corey is right that a final decision is not necessary where an ordinance specifically targets "precisely and only" an individual property, *S. Grande View Dev. Co. v. City of Alabaster*, 1 F.4th 1299, 1307 (11th Cir. 2021) (holding that when a city enacted an ordinance that "targeted precisely and only" a developer's property, the developer's claim was ripe even though it never applied for a variance), he is wrong that the 2021 ordinance targeted precisely and only his property. The 2021 ordinance applied to *all* C-2 zoned properties in the County. As Corey alleged in his complaint, he is a member "of a class of persons where property is zoned by [the] County as C-2," which includes property owners "along major thoroughfares in [the] County." Because the 2021 ordinance applied broadly to *all* C-2 zoned properties in the County, the 2021 ordinance, which defined prohibited truck stops for the C-2 zoned area, was not targeted precisely and only at Corey's property.

Corey needed to apply for a permit or variance for his claim to be ripe. *See Lozman*, 119 F.4th at 918 (refusing to employ the specifically-targeted exception when the challenged city ordinance applied generally). Because he did not, his claim is not ripe for judicial review.

### The Substantive Due Process Claim

Corey's substantive due process claim, which is also based on the 2021 ordinance, fails on the merits. We've previously recognized this type of claim as a facial "arbitrary and capricious due

process" claim. *Eide v. Sarasota Cnty.*, 908 F.2d 716, 721 & n.9 (11th Cir. 1990) (noting that while "[m]ost courts have referred to this type of claim as a substantive due process claim," that "terminology has contributed to [] confusion" between this type of claim and due process takings claims), *overruled in part on other grounds as recognized by S. Grande View*, 1 F.4th at 1305 n.9.[3] Corey's claim fits this mold. In essence, he alleges that the County's 2021 ordinance was an "arbitrary and capricious" legislative act that was unrelated to "the public health, safety, morals, or general welfare," and thus "an invalid exercise of police power." *Id.* at 721.

To make this type of claim, Corey needed to show that the 2021 ordinance was not "*rationally* related to a legitimate governmental purpose" ("so long as [it did] not infringe fundamental rights and [was] not discriminatory"). *See Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1308 (11th Cir. 2009). Taking the pleadings in the light most favorable to Corey, he did not make that showing.

---

[3] "An arbitrary and capricious due process claim can be either a facial challenge to the regulation or a challenge to the regulation as applied to the plaintiff's property." *Eide*, 908 F.2d at 723. "When a landowner makes a facial challenge," he argues that "*any* application of the regulation is unconstitutional." *Id.* at 724 n.14. In contrast, for an as applied challenge, "the landowner is attacking only the decision that applied the regulation to his . . . property, not the regulation in general." *Id.* Corey's arbitrary and capricious due process claim is a facial challenge; he could not allege an as applied challenge because he never applied for a permit or variance under the 2021 ordinance.

14                    Opinion of the Court                    23-13097

Instead, documents attached to the County's answer show that, before enacting the 2021 ordinance, the County had evidence that truck stops lead to increased crime, environmental pollution, noise, traffic, and lower property values (among other woes).[4] The County also knew about FBI statistics identifying truck stops as common locations for human trafficking. And the County heard from residents that truck stops were unsightly and that building one would hurt the community's aesthetic beauty. The pleadings show, in other words, that the County had a rational basis for enacting the 2021 ordinance to limit crime and pollution and to protect its aesthetic beauty. *See, e.g.*, *Doe v. Moore*, 410 F.3d 1337, 1345–46 (11th Cir. 2005) (holding that the government's desire to "protect its citizens from criminal activity" was a rational basis for a law requiring sex offenders to register their status with a local sheriff's office); *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995) (holding that concerns about "pollution" and "visual intrusion" were rational bases for a city ordinance prohibiting house boats); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1214 (11th Cir. 1995) (concluding that an ordinance prohibiting car dealerships was rationally related to a city's desire to have an aesthetically pleasing downtown area).

_____

[4] We may consider these documents, which were submitted to the County by the public in response to Corey's 2019 permit application, because they are central to Corey's claim that the 2021 ordinance was not rationally related to a legitimate governmental purpose and their authenticity is undisputed. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002)).

While Corey may "not agree with the wisdom or fairness of these rationales," that "is simply not the test." *Kentner v. City of Sanibel*, 750 F.3d 1274, 1281 (11th Cir. 2014) (rejecting an arbitrary and capricious legislative act due process claim). Because the pleadings show that the 2021 ordinance was rationally related to a legitimate governmental purpose, we affirm the district court's judgment on the pleadings on his arbitrary and capricious due process claim.

*The Equal Protection Claim*

Corey's "class of one" equal protection claim also fails on the merits. To state a "class of one" equal protection claim, Corey had to show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To be 'similarly situated,' the comparators must be '*prima facie* identical in all relevant respects.'" *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quoting *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007)).

As comparators, Corey alleged that he was treated differently from other C-2 property owners who were allowed to build gas stations. And as evidence of this "unequal treatment," he attached pictures to his complaint that show heavy trucks refueling at gas stations on C-2 zoned properties in the County.

But the problem for Corey is that the pictures show these other gas stations were not identical in all relevant respects to his planned truck stop. The other gas stations in the C-2 zone did not

have separate truck fueling, truck scales, truck parking, or wide turning areas.  Corey did not want to build a gas station like the ones in the pictures.  Instead, he sought to build a much larger project with a separate fueling area for heavy trucks, truck scales, separate truck parking, and a wide turning area to accommodate large trucks.  While the other property owners' regular gas stations were not prohibited by the 2019 ordinance, Corey's larger project for heavy trucks was.

Corey, in other words, was not "similarly situated" to the other C-2 property owners because his proposed truck stop was not "*prima facie identical in all relevant respects*" to their gas stations. *Grider*, 618 F.3d at 1264 (quoting *Griffin Indus.*, 496 F.3d at 1204). Because he points to no other comparators, we agree with the district court that Corey failed to state a class of one equal protection claim. *See Olech*, 528 U.S. at 564.

## CONCLUSION

For these reasons, we affirm the district court's judgment on the pleadings on Corey's takings, substantive due process, and equal protection claims.  As to his claim for injunctive relief under the Surface Transportation Assistance Act, we dismiss Corey's appeal as moot and vacate the portion of the district court's judgment which addressed it.[5]

---

[5] As the district court observed, because all his claims fail for lack of jurisdiction or on the merits, Corey's separate claim for attorney's fees must also fail.  *See*

**DISMISSED AND VACATED IN PART; AFFIRMED IN PART.**

---

*Estes v. Tuscaloosa Cnty.*, 696 F.2d 898, 901 (11th Cir. 1983).  Thus, we affirm the district court's judgment on his attorney's fees claim.